GEORGE DUGAN et al.

*v.*

HELLEN M. FOLLETT et al.

*Filed at Ottawa November 10, 1881.*

1. CONVEYANCE—*inuring of an after acquired title.** Where a party joins in a warranty deed purporting to convey a fee simple estate in a tract of land, an after acquired interest in him will inure by way of estoppel to his grantee.

2. LIMITATION—*as between tenants in common.* · The general rule is, that the Statute of Limitations does not run as between tenants in common,

---

* See *Holbrook* v. *Debo*, 99 Ill. 380, and cases there cited, showing when an after acquired title will inure to the prior grantee, and when it will not. Also, *People ex rel. Weber* v. *Herbel*, 96 Ill. 384; *Jones* v. *King*, 25 id. 383; *King* v. *Gilson's Admx.* 32 id. 348, and authorities there cited; *Rigg* v. *Cook*, 4 Gilm. 348; *Gochenour* v. *Mowry*, 33 Ill. 333; *Gill* v. *Grand Tower Mining*, etc. *Co.* 92 id. 249; sheriff's deed subsequently executed to grantor. *C. B. and Q. R. R. Co.* v. *Chamberlain*, 84 id. 333; *D'Wolf* v. *Haydn*, 24 id. 525.

for the reason, in part, that the possession of one is that of all, and this is especially so when all the parties derive title from the same deed or conveyance.

3. SAME—*of adverse possession as between tenants in common.* While mere possession alone, except possibly in very extreme cases, will not be sufficient to establish an adverse holding by one tenant in common against another, yet in such case, other considerations even short of an ouster may be sufficient for that purpose.

4. Where a party and his immediate grantor for more than seven years have held the undisputed possession of land under warranty deeds purporting to convey to the grantees a fee simple estate, without knowledge that any other persons had any claim to the premises, during all which time they had the exclusive enjoyment of the rents and profits without having accounted to any one, or having been required to do so, such possession will be regarded as adverse against others having an interest in the land as tenants in common with the person so in possession.

5. SAME—*does not run until the right of action accrues.* The Statute of Limitations does not commence to run until the right of action or right of entry accrues. It therefore does not commence to run against a remainder-man until the termination of the precedent estate, when the deed creating such prior estate is of record, or the party in possession has notice of its existence.

6. Where a party has held the undisputed possession of land under a warranty deed for more than seven years, during which time he has paid all taxes legally assessed thereon, without actual or constructive notice of a prior unrecorded deed creating a life estate with a remainder over to others who would otherwise be tenants in common with the one so in possession, such possession and payment of taxes by him will be a bar to a recovery by such remainder-men, even though seven years have not elapsed since the termination of the life estate.

7. NOTICE—*from the record of a suit.* Where, under a bill in chancery, the administrator of an estate is directed by a decree to invest certain moneys in his hands, in real estate, without describing the real estate in either the bill or decree, and to convey the same to the widow of his intestate for her life, with remainder to the heirs of the intestate, which he did, and reported the making of the deed to the court, which deed was never recorded, it was *held*, that the report on file in the court was not constructive notice of the existence of such conveyance. Had the object of the suit been to compel the conveyance of the particular lands, and the decree had so directed, the rule would be otherwise.

8. A purchaser of land is not bound to look beyond a judgment or decree, and the legal effect it may have on the title which is the subject of inquiry.

9. RECORDING LAW—*deed void as to subsequent purchaser without notice.* An unrecorded deed conveying a life estate with remainder over, is

void as to a subsequent purchaser without notice of its existence, for all purposes, and can not be set up by the remainder-man so as to prevent the running of the Statute of Limitations of 1839, in favor of the purchaser and those claiming under him.

APPEAL from the Circuit Court of Stark county; the Hon. DAVID McCULLOCH, Judge, presiding.

Mr. MILES A. FULLER, and Mr. JAMES H. MILLER, for the appellants:

Even though it were true that the parties in possession under the deed of Mrs. Jennings were entitled to the possession, and could not be dispossessed during her life, still that would not excuse the neglect of appellees to assert their rights in the premises, in some way open to them, within the time fixed by law. They could have asserted their rights in this land by asking partition, or by selling their interest therein, or by any other lawful means asserting their rights in the premises. *Scoville* v. *Hilliard,* 48 Ill. 453; *Hilliard* v. *Scoville,* 52 id. 449.

The appellants are within the terms of the Statute of Limitations in every respect. They have paid all taxes for many more than seven years, under color of title made in good faith, with exclusive possession. *Henrichsen* v. *Hodgen,* 67 Ill. 179.

The deed of Mrs. Jennings, Alvin and Wallace, could be notice only of the fact that they claimed some interest in the land, and that interest they conveyed, and it became united with the other titles. That deed could not be notice to the appellants that other parties not named therein had any rights in the premises. It could only be notice of such facts as appeared upon its face, or to which allusion was made in it. *Manly* v. *Pettee,* 38 Ill. 128.

Section 30, Rev. Stat., title "Conveyances," provides that all deeds, mortgages, etc., shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers

without notice, and all such deeds shall be adjudged void as to all such subsequent purchasers without notice, until filed for record. Now, unless it can be shown that the appellants had notice, actual or constructive, of the execution of a deed from Hugh Rhodes to Eunice Jennings and her children, then such a deed (even if it ever existed) was void as to the appellants.

Although appellants may have derived their possession indirectly from Mrs. Jennings, they do not take it subject to the terms and conditions of any unrecorded deed to her, unless they had notice of such deed. *Rogers* v. *Wiley*, 14 Ill. 65.

There is nothing in the chain of title to show that the appellees had any interest in the land, or that would put the appellants upon inquiry. · Had inquiry been made, they would have found no sufficient evidence of appellees' rights, because upon the most diligent examination it is now very doubtful, to say the least, whether such a deed ever existed. A suspicion of title is not sufficient to charge them with fraudulent intent. *McConnell* v. *Reed*, 4 Scam. 117.

The Shivvers tract was similarly situated, with no intimation on the record of appellees' interests. There is a total failure of evidence to show that any of appellants had any notice, actual or constructive; but, on the contrary, they deny any such knowledge. *Manly* v. *Pettee*, 38 Ill. 135; *Kennedy* v. *Northup*, 15 id. 157; *Morrisey* v. *Kelly*, 22 id. 627.

Mr. C. C. WILSON, for the appellees:

Nelson and his assignees having acquired the life estate of Mrs. Jennings, and holding by virtue of such life estate, were bound to pay the taxes, and could acquire no limitation by such payment that would commence to run as a bar to the interest of the heirs, until the death of Mrs. Jennings. *Prettyman* v. *Wolston*, 34 Ill. 192, and cases there cited.

Besides this, the proceedings in the chancery case were matters of record in the circuit court, showing fully that a deed had been made to Eunice Jennings for her life, with remainder to these heirs of Eric Rhodes for these lands. This record afforded notice as much as if the deed had been recorded.

Mrs. Jennings died November 18, 1875, and the heirs of Eric Rhodes could assert their rights as remainder-men to the lands at any time within seven years from the death of Mrs. Jennings. They could not have asserted their title during the existence of the prior life estate.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

On the 30th of August, 1878, Hellen Follett (formerly Hellen Rhodes), Robert Rhodes, Alonzo Rhodes, Alvin Rhodes and William Rhodes, filed in the Stark county circuit court their bill in chancery, against George Dugan, John Ham and Hopkins Shivvers, for the partition of three several tracts of land in said county, respectively known as the Dugan tract, Ham tract, and Shivvers tract. Pending the suit, William Rhodes died, and his widow and children were made defendants, and the case thereupon proceeded in the name of the other complainants. Upon the hearing, a decree was rendered awarding partition, substantially as prayed for in the bill, and the case is brought here by appeal.

We have carefully examined the evidence in this case, and find the material facts, in substance, as follows: Eric Rhodes, the father of petitioners, died in Hancock county, this State, in October, 1841, and his brother Hugh became his administrator. At the time of his death he left him surviving his widow, Eunice Rhodes, who subsequently married Ebenezer Jennings, and six children, his only heirs at law, namely, Orrin, Alonzo, Alvin, William, Robert, and Hellen, now Mrs. Follett. In 1849 his widow, then Eunice Jennings,

instituted a suit in chancery in the Stark county circuit court against the administrator—the same being done with his approval and under his advice—which shortly afterwards resulted in a decree directing him to invest certain moneys then in his hands as administrator, in real estate, and to convey the same to Mrs. Jennings for life, with remainder in fee to the heirs of her late husband, Eric Rhodes. In obedience to this decree, Hugh Rhodes, on the 20th day of November, 1850, conveyed the lands now in controversy to Mrs. Jennings for life, with remainder in fee to the above named heirs of Eric Rhodes. This deed, from some cause or other, was never put on record; but the fact of its execution was reported to the court by the administrator, and his report still remains as a part of the files of the suit commenced against him by Mrs. Jennings, as just stated. At the time of this conveyance to Mrs. Jennings, she was in possession of the land in controversy and residing on the Dugan tract, and continued in possession until in March, 1852, when she transferred the possession to Peter Nelson. Previous to delivering possession to Nelson, as just stated, to-wit, on the 31st of January, 1852, she and her sons William and Alvin conveyed all their interest in the Ham and Dugan tracts to Franklin Rhodes, a blind son of Hugh Rhodes, who subsequently, on the 6th day of March following, conveyed to the said Peter Nelson, by warranty deed, the two tracts last mentioned, his father, Hugh Rhodes, joining with him in the deed. On the 11th day of August, following, Orrin Rhodes conveyed by quitclaim his interest in all three of the tracts to Franklin Rhodes. The interest conveyed by this deed to Franklin Rhodes in the Dugan and Ham lots, by virtue of his warranty of them to Nelson, as above mentioned, according to a familiar rule of law, inured by way of estoppel to Nelson, thus giving him in the two lots in question the entire life estate of Mrs. Jennings, and three-sixths or one-half of the fee. Peter Nelson and

wife, by warranty deed dated September 13, 1854, conveyed the two lots last mentioned to Thomas Dugan, from whom appellant Ham, by a regular chain of title, derives title to the Ham lot, and appellant George Dugan, in like manner, derives title to the Dugan lot, each having the fee in the three-sixths of their respective lots. Eunice Jennings and Alvin Rhodes, by warranty deed dated January 31, 1852, conveyed the Shivvers lot to one Wilson Rhodes, whereby the latter acquired the life estate of Mrs. Jennings and one-sixth of the fee in said lot, to which appellant Shivvers succeeded by a regular chain of title, on the 12th day of June, 1869. Mrs. Jennings died on the 18th of November, 1875.

Waiving for the present the consideration of the Statute of Limitations, it clearly follows, if we have committed no error in grouping together the facts, that appellees, Hellen Follett, Alonzo and Robert Rhodes, respectively, own one-sixth of the Ham and Dugan lots, and the remaining three-sixths belong to appellants Dugan and Ham, respectively; and that Hellen Follett, Alonzo Rhodes, Robert Rhodes, Franklin Rhodes, and the heirs of William Rhodes, respectively, own one-sixth of the Shivvers lot, and that Hopkins Shivvers owns the remaining sixth.

This conclusion, with respect to the interests of the parties, is the same as that reached by the circuit court, so far as the Dugan and Ham tracts are concerned; but that court found that appellant Shivvers was the owner of two-sixths of the Shivvers lot, and took no notice of the one-sixth which still seems to be in Franklin Rhodes. It is clear that Orrin Rhodes had an equal interest with the other heirs of Eric Rhodes, in the entire property which was conveyed by him, as already seen, to Franklin Rhodes, on the 11th of August, 1852, and the only deed we have been able to find from Franklin Rhodes, is the warranty deed of the 6th of March, 1852, to Peter Nelson, in which his father joins; but this conveyance does not include the Shivvers lot. It only pur-

ports to convey the Ham and Dugan lots, and this would clearly leave one-sixth of the Shivvers lot still in Franklin Rhodes, or his legal representatives. However, this is an error of which the present appellants can not complain.

The most of the arguments of counsel have been devoted to the question whether, as a matter of fact, Hugh Rhodes, on the 20th of November, 1850, in pursuance of the order of court, conveyed the premises in controversy to Mrs. Jennings for life, with remainder in fee to the heirs of Eric Rhodes, as charged in the bill. The circuit court found that such conveyance was made, and from the best consideration we have been able to give the testimony, and all the facts and circumstances having a bearing upon the question, we are of opinion that the conclusion of the circuit court was right. It therefore only remains to inquire what effect, if any, have the limitation laws on the rights of the parties.

Assuming, as we do, that Hugh Rhodes was the original owner of these lands, and that they were conveyed by him to Mrs. Jennings and the heirs of Eric Rhodes, at the time and in the manner we have seen, it follows that appellants, and those under whom they claim, have, since their respective titles accrued, been, and are now, tenants in common with appellees; hence in determining whether the Statute of Limitations is a bar to the present proceeding, it is proper to keep this relation of the parties in view.

The general rule unquestionably is, that the statute does not run as between tenants in common, on the ground, in part, that the possession of one tenant, in contemplation of law, is the possession of the others, and this is especially so where all the parties derive title from the same deed or conveyance. Angell on Limitations, secs. 422, 423.

While mere possession, alone, except possibly in very extreme cases, will not be sufficient of itself to establish an adverse holding by one tenant in common against another, yet in such case other circumstances, short of an ouster, may

be sufficient for that purpose.  Angell on Limitations, secs. 432, 433.

Upon consideration of the evidence relating to this aspect of the case, we think it satisfactorily establishes the fact that appellants and their immediate grantors have, for more than the statutory period, been holding the premises adversely to all the world, including appellees.  They have been holding under warranty deeds purporting to convey to the grantees fee simple estates, and we discover nothing in the evidence that warrants the assumption that they even so much as knew that appellees had any claim to the premises. During all this time they have had the exclusive enjoyment of the rents and profits, without having accounted to any one, or having been required to do so, by appellees or any other person, and this we regard as an adverse holding.  Moreover, during this period appellants have, so far as anything appears to the contrary, in good faith paid all taxes legally assessed on the premises, thus making out a clear case of possession, payment of taxes under claim and color of title made in good faith, for more than the statutory period.

It is clear, therefore, unless there is something in the facts of this case which takes it out of the operation of the statute, the right to maintain the present proceeding is barred by the Limitation act of 1839.

It is a fundamental principle in the law of limitations that the statute never commences running until the right of entry accrues, and since by the limitations of the deed from Hugh Rhodes to Mrs. Jennings, under which appellees claim, their right of entry did not accrue till her death, which occurred less than seven years before the commencement of the present proceeding, it would seem to follow that this proceeding is not barred by the Limitation act of 1839, and such undoubtedly would be the case if that deed had been properly recorded, or if appellants and those under whom they claim had purchased with notice of appellees' rights.  But that deed was

never recorded, and, as already stated, there is nothing to show that appellants or their immediate grantors had any notice of its existence.

It is insisted, however, that the report of the administrator in the case of Jennings against Rhodes, showing the conveyance of this land to her and the children in pursuance of the decree in that case, is constructive notice of appellees' rights under that conveyance, and this we regard as the turning point in the case. Had the object of the suit of Jennings against Rhodes been to compel the administrator to convey these particular lands, then we would have no hesitancy in holding the record of that case constructive notice of the rights of those claiming under the decree in it, whether the deed was placed upon record or not. But such was not the object of that suit. Neither the decree nor the pleadings in that case contain any description of these lands, or even make the slightest reference to them. In the investigation of titles, purchasers look for decrees and judgments against those who appear of record to have been owners, and when it is ascertained that a particular decree or judgment does not affect the title which is the object of inquiry, it is believed not to be customary to look further; and to hold that purchasers are affected with constructive notice of every fact relating to the purchased estate that may happen to appear in some of the files of a case, and not elsewhere, would, in our judgment, be carrying the doctrine of constructive notice to a dangerous extent. The establishment of such a rule would have a direct tendency to unsettle titles, for no one could know of a certainty when he was getting a good title, without examining the files in every case in the county where the land lay, and this would be wholly impracticable. We hold, therefore, purchasers are not bound to look beyond the judgment or decree, and the legal effect it may have on the title which is the subject of inquiry.

It is further said, the tenant for life is bound to pay all taxes, and since appellants succeeded to the life estate of Mrs. Jennings they were legally bound to pay the taxes, and hence they could not avail themselves of the Limitation act of 1839. Conceding such would have been the case if the Jennings deed had been put upon record, or if appellants and those under whom they claim had purchased with notice of that deed, yet appellants claim, as we have already seen, adversely to appellees, and independently of any rights acquired through the Jennings deed, and insist that inasmuch as that deed was not placed upon record, and they did not otherwise have notice of it, they are not to be affected by its provisions, and in this we think they are right. The recording and limitation laws are both a part of the law of the State, and of equal force and validity, and the courts should so construe and apply them as to effectuate the objects and purposes of the legislature in adopting them. The 30th section of chapter 30 of the Revised Statutes, entitled "Conveyances," provides, "that all deeds, mortgages, etc., shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers without notice, and all such deeds shall be adjudged void as to all such subsequent purchasers without notice, until filed for record." To hold that appellants, under the facts in this case, are to be affected in any manner by the Jennings deed, would be to simply disregard this plain provision of the statute, which we are not permitted or inclined to do. In construing and giving effect to the limitation laws, courts must do so in such manner as to also give effect to this plain provision of the statute making all deeds void as against subsequent purchasers without notice, till filed for record. *Kennedy et al.* v. *Northup et al.* 15 Ill. 149; *Holbrook* v. *Dickenson,* 56 id. 497.

The decree of the circuit court not being in accord with the views here expressed, it will be reversed, and the

cause remanded for further proceedings in conformity with them.

*Decree reversed.*

Mr. Justice Dickey: I concur in the conclusion, but not in all that is said in this opinion.