## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

## MARCH TERM, 1903.

---

*(Continued from Volume 100.)*

FREDERICK A. KEUTHAN, Appellant, v. ST. LOUIS TRUST COMPANY, Respondent.

St. Louis Court of Appeals, March 17, 1903.

1. **Abstracter of Titles: SUIT AGAINST: INSTRUCTION: FAIL-URE TO EXAMINE MATTERS DEHORS THE RECORD, NOT NEGLIGENCE.** Where an abstracter of title in examining a transfer by tax deed saw that the record showed jurisdiction in the court to render the judgment on which the deed was founded, and that the parties to the judgment and the title claimed under it were identical in name and description, it was not actionable negligence for him to fail to discover a defect in a sale of the property for taxes, in the absence of evidence that he read a deposition on file in support of a motion to vacate the judgment, which was denied, which deposition would have disclosed that the proceedings conveyed only one-sixteenth of the title and fifteen-sixteenths of a life estate instead of the fee, and hence an instruction that the abstracter was guilty of negligence as a matter of law, was erroneous.

2. ———: ———: **DAMAGES, MEASURE OF.** Where, in an action against an abstracter of title, for negligence in failing to discover a defect, plaintiff proved that he paid $2,500 for the property, and by reason of the defect he only acquired one-sixteenth of the title and fifteen-sixteenths of a life estate therein, the measure of dam-

ages was the difference between what he paid and the present worth of what he actually received, estimating the true value of the property at $2,500.

3. ——: ——: RENTS AND PROFITS NOT RECOVERABLE BEFORE EJECTION. In an action against an abstracter of title for damages sustained by his failure to disclose a defect, where plaintiff had not been ejected, but had received the rents and profits of the property, he was not entitled to recover interest in addition to damages.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. Zachritz,* Judge.

AFFIRMED AND REMANDED.

*H. M. Wilcox* and *Geo. W. Lubke* for appellant.

(1) In a tax suit it is the duty of a title examiner to examine everything in the case that shows what was done from the very incipiency of the case to the end thereof. (2) "Whenever a tax deed is relied on as a foundation of title which is independent of and adverse to all other titles, particularly that of the person who was last seized of the fee, a full exposition of the method by which the right was acquired is an essential preliminary to demonstrate the validity of all succeeding conveyances. The tax deed, unaided by statute, is not sufficient to demonstrate title, though it may be prima facie evidence as such, but the prior steps must be shown, and all the requisites necessary to a complete and perfect title under the statute must be fully and succinctly stated." Warville on Abstracts, p. 571, sec. 18. (3) If the respondent, at the time it executed said certificates or either of them, knew or by the exercise of ordinary care might have known, that before the bringing of said tax suit, Jane Sauriol, grantee in the Laclede Race Course Association's deed, above mentioned, died leaving children surviving her, as aforesaid, then the respondent is liable. Schade v. Gehner, 133 Mo. 252.

*Stewart, Cunningham & Eliot* for respondent.

The interlocutory judgment granting defendant a new trial was right. There was error in the trial, instructions, finding and judgment which the circuit court set aside, in the following particulars: In declaring in plaintiff's instruction No. 2, that it was defendant's duty to examine "all the files" in all the suits in all the courts of record in St. Louis, which "appertained to or affected the title of the lot in question." Dugan v. Follett, 100 Ill. 581; Dodd v. Williams, 3 Mo. App. 278; Schade v. Gehner, 133 Mo. 252; Wakefield v. Chowen, 26 Minn. 379; Dundee, etc., Co. v. Hughes, 20 Fed. 39-42; Bank v. Ward, 100 U. S. 195; Chase v. Heaney, 70 Ill. 268; Clark v. Marshall, 34 Mo. 429; Ford v. Unity Church Society, 120 Mo. 498; Odle v. Odle, 73 Mo. 289; Warville on Abstracts, pp. 77, 492, 522, 618-20.

BLAND, P. J.—In December, 1895, plaintiff was negotiating with Annie Edwards and her husband for the purchase of lot 15, block 14, of the Laclede Race Course subdivision, in city block No. 3985, of the city of St. Louis, and received from them the following certificate of title:

"St. Louis Trust Company,
    Capital and Surplus, $3,000,000.
    Land Title Department.    No. 615 Chestnut St.
    No. 2255.            St. Louis, Mo., May 4, 1895.
                                    11 A. M.
"M. J. Edwards, Esq.,
    "Sir:—The St. Louis Trust Company hereby certifies that, according to the records contained in the several offices wherein conveyance of, or incumbrances on, or liens against real estate, situated in the city of St. Louis, Missouri, may be filed or recorded, the title to lot No. 15, in block 14, of the subdivision of Laclede Race Course, and in city block No. 3985, in said city of

St. Louis, fronting 25 feet on the south line of Hunt avenue, by a depth southwardly of 125 feet to an alley 15 feet wide, as shown on the foregoing plat, is fully vested in fee simple in Annie Edwards, and is unincumbered except as follows:

"General taxes of 1893 and 1894—delinquent— $23.75 and interest.

"General taxes of 1895—a lien not now payable.

"Paid May 31, 1895. H. Y. Sherwood, Manager.

"Special Taxes: None found of record in the city comptroller's office except the following:

"Street sprinkling 1894—delinquent $0.71 and int.

"Street sprinkling 1895—a lien not now payable.

"Paid May 31, 1895. H. Y. Sherwood, Manager.

"Assessments for street and alley openings: None found of record in the city comptroller's office.

"Deed of trust to trustee of John B. Kreiger, dated July, 1892, recorded in book 1105, page 121, to secure one principal note for $1,200, due two years after date, and four semi-annual interest notes for $36 each.

"Judgment: Dr. B. Chamblin v. M. J. Edwards, May 11, 1893, $23.

"Attachments: None.

"Mechanics Liens: None.

"In witness whereof, the St. Louis Trust Company has caused this certificate to be signed by its president, attested by its sec- (SEAL) retary, and its corporate seal to be hereunto affixed the day and year first above written.

"Void unless attached to our examination No. 2255, lot 15, city block 3985.

"ST. LOUIS TRUST COMPANY,

"By THOMAS H. WEST, President.

"Attest: John D. Filley, Secretary,

"H. Y. Sherwood, Manager Title Department."

He took this certificate to the St. Louis Trust Company and delivered it to H. Y. Sherwood, manager of defendant's title department, and asked him to have the

title examined, or rather to have it extended down to December 28, 1895, and afterwards, to-wit, on December 28, 1895, received from plaintiff the following certificate and paid defendant a fee of five dollars therefor:

"St. Louis Trust Company,

Capital and Surplus, $3,000,000.

Land Title Department.   No. 615 Chestnut St.

No. 2255.         St. Louis Mo., Dec. 28, 1895.

9 A. M.

"Frederick H. Keuthan, Esq.,

"Sir:—The St. Louis Trust Company has examined from the 4th day of May, 1895, the date of its annexed certificate, to the present time, the title to the property therein described, to-wit:

"Lot No. 15, in block 14, of the subdivision of Laclede Race Course, and in city block No. 3985 of the city of St. Louis, and reports that all the title which Annie Edwards is shown by the said certificate to have then had on and to the same, is still fully vested, according to the St. Louis city records, in said Annie Edwards, subject to the following intermediate incumbrances only:

"General taxes of 1895—Due............$21.53

"General taxes of 1896—A lien.

"Special taxes and assessments for street and alley openings—none found of record in the city comptroller's office, except the following:

"Street sprinkling, 1895—Due............$0.54

"Deed of trust to trustee for S. C. Buckingham, dated May 4, 1895, recorded in book 1287, page 50, to secure one note for $200, due one year after date, and two semiannual interest notes for $7 each.   Subject to deed of trust for $1,200.

"Judgments—None.   Attachments—None.   Mechanics Liens.—None.

"Deed of trust for $1,200 recorded in book 1105, page 121, and judgment v. M. J. Edwards, remain unsatisfied of record.   Taxes of 1894 have been paid.

"In witness whereof, the St. Louis Trust Company has caused this certificate to be signed by its president, attested by its sec-(SEAL) retary, and its corporate seal to be hereunto affixed the day and year first above written.

"Void unless attached to our examination No. 2255, lot 15, city block 3985.

                    "ST. LOUIS TRUST COMPANY,
                          "By HENRY C. HAARSTICK,
                                "First Vice-President.

"Attest:  John D. Filley, Secretary,
     "H. Y. Sherwood, Manager Title Department."

Plaintiff testified that on the faith of these certificates he completed the purchase of the lot and received a warranty deed for the same from Annie Edwards and her husband for which he paid $2,500, including the incumbrances named in the certificate of title which he assumed and afterwards paid.

On the trial it was stipulated by and between the parties that on and prior to January, 1869, the title to the lot was vested in the Laclede Association. On June 17, 1869, the Laclede Association conveyed the lot by warranty deed to Jane Sauriol which deed was recorded in book 386, page 466. Jane Sauriol et al., by sheriff, conveyed the lot by two sheriff's deeds, dated May 11, 1892, to Michael Morrissey. Michael Morrissey and wife, conveyed the lot by warranty deed, dated August 19, 1890, to Marcellus J. Edwards. Marcellus J. Edwards and wife, conveyed the lot by warranty deed, dated April 3, 1894, to Frederick H. Keuthan. Frederick H. Keuthan and wife, conveyed the lot by special warranty deed, dated April 3, 1894, to Annie Edwards. The last two deeds as appear in evidence were made for the purpose only of transferring the title from Marcellus J. Edwards to his wife, Annie Edwards, and that Mr. Keuthan knew nothing about the title at the time when the deeds were made. Annie Edwards and husband conveyed the lot by war-

ranty deed, dated December 26, 1895, to Frederick H. Keuthan.

Besides the above, was the following:

"Fabian Sauriol and wife to Fabian M. Sauriol, et al., Quitclaim deed, dated June 13, 1886. Recorded in book 805, page 490."

The last-mentioned deed was made by Fabian Sauriol and his second wife to the sons of Fabian Sauriol by his first wife.

After his purchase the plaintiff went into possession of the premises and is still in the possession thereof. For the first ten months he received twenty dollars per month as rent therefor, after that and down to the trial he had received fifteen dollars per month rent.

A short time before the beginning of this suit, plaintiff was about to sell the premises. The prospective purchaser wanted a certificate of title from the Lincoln Trust Company. This company caused an examination of the title to be made and discovered what was thought to be a defect in the title and the sale fell through. Plaintiff then demanded damages of the defendant which it refused to pay, whereupon this suit was commenced.

After alleging the employment of defendant to examine the records and give a certificate of the true condition of the title, the petition alleges:

"Plaintiff further states that defendant did not carefully and faithfully examine the title to said lot and did not deliver to him a correct and true certificate of the title thereto, but on the contrary negligently and carelessly examined said title to said lot and the records affecting the same, and that said certificate was untrue and erroneous, in this, that at the time it was delivered to plaintiff, the said Annie Edwards was not the owner of the entire fee simple title of said lot, as said certificate set forth, but was the owner of only an undivided one-sixteenth of said fee, and the owner during the nat-

ural life of Fabian Sauriol of a life estate in the other fifteen-sixteenths of said fee, and that said other fifteen-sixteenths thereof was then vested subject to said life estate in Fabian M. Sauriol, William Henry Sauriol, and Charles Joseph Anthony Sauriol, and that defendant by the exercise of ordinary and reasonable care in making its said examination could have discovered said defects in the title of said Annie Edwards to said lot.

"Plaintiff further states that by reason of said certificate being erroneous and untrue, and by reason of defendant carelessly and negligently examining the title to said lot as aforesaid, he has been damaged in the sum of $2,500.

"Plaintiff further states that, as soon as he had any knowledge or belief as to said certificates being untrue and erroneous, he called on the defendant and demanded that it make good to him his said damages, and that defendant then, and ever since then has, and now does, refuse so to do.

"Wherefore plaintiff prays judgment for $2,500 and costs."

The answer was a general denial.

The issues were submitted to the court, who, after hearing the evidence, found for the plaintiff and assessed his damages at $1,294.25.

Defendant filed a motion for new trial assigning as error the giving and refusing of instructions and that the verdict of the court was against the evidence. The court sustained the motion and granted a new trial "on the grounds of error in instructions and because the finding was against the law and the evidence." From the order granting a new trial plaintiff duly appealed.

The chain of title from the Laclede Association to plaintiff is complete, but a latent defect in the sheriff's deed to Morrissey was discovered when plaintiff was about to sell the premises. This sheriff's deed is founded on a judgment rendered in a suit for back

taxes against Jane and Fabian Sauriol, commenced February 2, 1881, in the St. Louis Circuit Court. To the summons issued in the cause the sheriff returned that defendants were not found. On this return an order of publication to defendants was made November 15, 1881. Proof of the publication of this order was made at the March term, 1882, and at the same term judgment by default was rendered. Execution was issued on the judgment and the lot was sold thereunder at the May term, 1882, Morrissey becoming the purchaser. In January, 1884, Fabian Sauriol filed his motion in the circuit court to vacate the judgment, quash the execution and set aside the sheriff's deed. Morrissey and others were notified of the filing and pendency of this motion. In support of the motion, the deposition of Fabian Sauriol was taken at Tacoma, Washington. This deposition was filed and published in the St. Louis Circuit Court and was thereafter kept with the papers in the tax suit.

The following is an abstract of the evidence from the deposition of Fabian Sauriol opened and filed in said back tax case, which was taken April 10, 1884:

"Said Sauriol testified that at that time he resided at Tacoma, Washington Territory; that he was the defendant in said tax suit; that he was married to his first wife, Jane Judge, in the city of St. Louis, Missouri, on the 16th day of May, 1860; that his first wife died in St. Louis, on the 16th day of March, 1870, and was buried in Calvary cemetery; that he married his second wife, Jane Cartwright, in 1875; that he had five children by his first wife, named Fabian M., William Henry, Charles Joseph Anthony, Mary Olive and Mary Jane; that Mary Olive and Mary Jane were dead at that time, and that the rest were all living; that Fabian M. Sauriol was, at that time, aged twenty-three years; Wm. H., twenty-one years; Charles Joseph Anthony, nineteen years; that Mary Olive died before her mother's

death, and that Mary Jane died three months and fourteen days after her mother's death.''

On November 5, 1884, the motion to vacate, etc., was overruled and no further steps were taken in the matter.

Fabian Sauriol's deposition was taken by plaintiff, on May 2, 1901, at Tacoma, Washington, and read in evidence on the trial of this cause. He testified as follows:

''That he would be sixty-four years old on the 9th day of May, 1901; that he lived at Tacoma, Washington; that he was first married to Jane Judge, a single woman, on May 16, 1860; that his first wife died March 6, 1870; that there were five children born by this marriage, named Fabian M., William Henry, Charles Joseph Anthony, Mary Olive and Mary Jane; that the two girls are dead; that Mary Olive died at the age of nine months, and before her mother died, and that Mary Jane died some time over three months after her mother's death; that the three sons are still living; that he married his second wife, Angela Josephine Virginia Cartwright, in St. Louis, March 28, 1875, and that she is now living, and that they are living together as husband and wife; that we have always called my second wife Jane, and she is called Jane by her own parents, but her full name, as heretofore stated by me, was the name she was christened with a few days before her marriage to me, but she has never used that name, except in the certificate of marriage. Witness testified that he bought the property in controversy in June, 1869, at auction, and placed the title in the name of his first wife, Jane; that the property in question remained in witness's first wife's possession until she died, and that he never did anything with the premises after her death; that his first wife did not leave any will, and there never was any probate proceedings upon her estate; that his first wife was buried in Calvary Cemetery in St. Louis; that neither witness or his said children or second wife

ever made any conveyance of said property, but that he and his second wife, in May, 1875, gave a deed of trust or mortgage, which witness afterwards paid; that witness and his second wife, and all of his children then living, left St. Louis in August, 1875.''

The deed of trust mentioned in Sauriol's deposition, as having been executed in 1875, was signed and acknowledged by Fabian Sauriol and Jane Sauriol, his wife.

It is conceded by plaintiff that Fabian Sauriol, at the time of the rendition of the judgment in the back tax suit and the sale on the execution issued thereon, was the owner in fee of one-sixteenth and had a life estate in fifteen-sixteenths of the lot, and that the sheriff's deed conveyed this interest to Morrissey.

The court at the instance of plaintiff declared the law as follows:

''1. The court declares the law to be that, if the court sitting as a jury, finds and believes from the evidence that the defendant, prior to the execution of either of the certificates offered and read in evidence by the plaintiff, knew, or by the exercise of ordinary or reasonable care on its part, might have known that Jane Sauriol, grantee in the deed of the Laclede Race Course Association, died prior to the beginning of the tax suit offered in evidence, leaving children surviving her, and that she never conveyed said lot during her lifetime, and that said children were not made parties to said tax suit, then the defendant is liable.

''2. It was the duty of the defendant to have examined all records and conveyances, suits and files, recorded and kept in the different public offices in the city of St. Louis and the courts of record thereof, which appertained to or affected the title of the lot in question in this case, and if, by the exercise of ordinary or reasonable care in so doing, defendant could have seen the files in the tax suit, No. 2093, including the deposition and motion to vacate judgment and quash execution

filed in said suit, and have ascertained therefrom that said Jane Sauriol died before the filing of the tax suit, leaving children surviving her, and made no conveyance of the lot prior to her death, and that her said children were not made parties to said tax suit, then the defendant is liable.

"3.   The title made by the sheriff's deed was one *in invitum,* that is, against the will of the defendants named in the writ of execution, and, therefore, the defendant should have exercised greater care to ascertain that the proceedings in said tax suit were regular and conferred upon the court full jurisdiction, and if the defendant failed to exercise this care, and in consequence thereof, made an untrue certificate, and the plaintiff suffered loss thereby, then the defendant is liable.

"4.   For the purpose of the examination of the title to the lot in controversy, the deposition of Fabian Sauriol filed on the 22nd day of April, 1884, in the tax case No. 2093, and which filing was noted and recorded in book 4, page 310, of the record book of the circuit court of the city of St. Louis, must be considered as forming a part of the records of that case, although not such for the purpose of an appeal or writ of error.

"5.   The court also declares the law to be that for the purpose of making an examination of the title to the premises in question here the motion to set aside the judgment in the back tax suit in evidence numbered 2093, and the filing of which motion was noted in book 4, at page 229, of the record book, of the circuit court must be considered as part of the record of said cause, although not such for the purpose of an appeal or writ of error in said cause. .

"6. If the court sitting as a jury finds for the plaintiff, the measure of damages is what the court may believe from the evidence to have been the value of the premises at the time when the plaintiff completed his purchase, less one-sixteenth thereof, and less also the

value of the curtesy of the remaining fifteen-sixteenths at the date of the deed to plaintiff—namely, December 28, 1895, computed upon the life of said Fabian Sauriol's age at that time.''

Whether or not the officer of the defendant who made the certificate of title in making his examination of the title, examined the proceedings in the tax suit, and if he did whether or not he discovered the motion and deposition of Fabian Sauriol, filed with the papers in that cause, is not in evidence, for the reason the officer who made the examination was dead at the time of the trial.

The instructions given for plaintiff declared, as a matter of law, that it was the duty of defendant to both examine the proceedings in the suit for back taxes and to discover and read the deposition of Sauriol, and on the information contained in said deposition to ascertain for himself whether or not Jane Sauriol died before the commencement of the tax suit, leaving children surviving her who were not made parties to that suit. An investigator of title for hire is required, in the performance of his undertaking, to exercise skill and care, and if he fails to do either and damage results to his employer by reason of his negligence he will be liable, but he is not a guarantor of the title. Schade v. Gehner, 133 Mo. l. c. 257.

Warvelle on Abstracts, p. 522, sec. 6, says:

"It is a fundamental rule in equity that purchasers are directly affected by every matter or circumstance concerning the title to the property they take, which affirmatively appears from the pleadings or decrees of courts of competent jurisdiction, in actions relating to such property, whether such purchasers have actual notice or not. It is the application of this rule which renders necessary a searching investigation of the court rolls whenever real property is sold, for every man is presumed to be cognizant of what transpires in the courts of justice, and the law will charge him with

actual notice of whatever there occurs, which affects the merits of the title he would take. This rule, which has always been considered a hard one, is not a favorite with the courts, who are ever inclined to limit its application, and it will not be extended to embrace collateral matters, or matters not specifically mentioned in the bill or decree,'' etc. See also Dugan v. Follett, 100 Ill. 581.

Where a conveyance of real property results from legal proceedings and the official deed is only prima facie evidence of the recitals therein, as is a tax deed in this State, an examiner of title should do one of two things: he should either by marginal notes on his abstract call attention to the fact that the deed is but prima facie evidence of title, or he should examine the court proceedings and ascertain for himself whether or not the court rendering the judgment had jurisdiction of the subject-matter and had also acquired jurisdiction of the person of the defendant, and that the parties to the suit and to the title are identical. Warvelle on Abstracts, p. 619. Such an examination would ordinarily be sufficient, if the record showed jurisdiction in the court to render the particular judgment and the parties to the judgment and the title claimed under it to be identical in name and description, and it would not be negligent in the examiner to fail to make inquiry *dehors* the record to ascertain if there might not be some possible defect in the proceedings, or error in the name or description of the parties. Neither the motion or deposition filed by Fabian Sauriol to vacate the judgment, etc., formed any part of the record proper. United States v. Gamble & Bates, 10 Mo. 457; Christy's Adm'r. v. Myers, 21 Mo. 112; City of St. Louis v. Pahl, 114 Mo. 32; State v. Brennan, 164 Mo. l. c. 506, and cases cited. An examiner, seeing that the motion had been denied would not be expected to examine the papers and review the action of the court. But if he read the deposition, it was of sufficient importance to put an ordinarily

prudent man on inquiry and, if he neglected to make inquiry, he would unquestionably be guilty of negligence. The evidence does not show that the examiner read the deposition. In the absence of such evidence, we think the court erred in declaring, as a matter of law, that he was guilty of negligence.

2. If instruction No. 4, asked by defendant but refused, should be modified to conform to the views herein expressed and then given, it, with those that were given for defendant, would fully present the defense made at the trial.

We do not think the sixth declaration of law given for plaintiff states the correct rule of plaintiff's measure of damages. He paid $2,500 for a full fee-simple title. He actually got one-sixteenth of that title and fifteen-sixteenths of a life estate for and during the life of Fabian Sauriol. His loss was the difference between what he had paid ($2,500) and the present worth of what he actually received, estimating the true value of the lot at $2,500. Nor do we think he is entitled to interest on the loss, for the reason he has had the uninterrupted possession of the lot and has enjoyed the rents and profits thereof. He is not entitled to both rents and interest. Hutchins v. Roundtree, 77 Mo. 500; Hazelett v. Woodruff, 150 Mo. 534.

The judgment is affirmed and remanded. All concur.