CHARLES CRAWFORD, *et al.,* Appellants, v. FRANK MEIS, Appellee.

CHARLES CRAWFORD, *et al,* Appellants v. BERNARDINE LUTH-MERS, *et al,* Appellees.

CHARLES CRAWFORD, *et al,* Appellants v. WILLIAM BARTMAN, *et al,* Appellees.

Remainderman: RIGHT TO PURCHASE TAX TITLE. Tenants in remainder, having no right to possession at the time of a tax sale, may acquire an outstanding tax title for their exclusive benefit as against their co-tenants in remainder.

Purchase of Tax Title by Life Tenant. A life tenant cannot acquire, as against remaindermen, the fee title under a tax deed, as the transaction amounts simply to a redemption from the tax sale.

Ouster of Remaindermen: LIMITATIONS: TITLE BY ADVERSE POSSESSION. Where life tenants and a part of the remaindermen join in a general warranty, the grantees paying full value and entering into possession which continues for the statutory period of limitation, paying taxes and making improvements without actual knowledge of any defect in the title, all of which is known to the remaindermen not joining in the conveyance, it amounts to an ouster and disseisin which will ripen into a title by adverse possession.

*Appeal from Dubuque District Court.*—HON. FRED O'DON-NELL, Judge.

THURSDAY, APRIL 14, 1904.

ACTIONS for partition of real estate. In March, 1856, Theophilus Crawford, Sr., died in the state of Vermont, testate. His will was probated in Dubuque county, this state, in 1857. By the terms thereof he devised to his son, Theophilus Crawford, Jr., and his wife, Eliza Crawford, the use and income during their natural lives of a tract of land con-

sisting of three hundred and twenty acres, situate in Dubuque county. The will then provides for the remainder, the testator devising all said tract of land after the decease of his said son and his wife, to the children of said son. Theophilus Crawford, Jr., and his wife went into immediate possession of the lands, and continued in actual possession thereof until the year 1866. At the date of the will Theophilus Crawford, Jr., had six children in being—George W., Franklin, Helen A., Alexander, Lewis, and Charles; the latter, one of the plaintiffs in this action. Alexander died unmarried and intestate in 1859. In 1861 the treasurer of Dubuque county sold all said lands at tax sale, and in 1865 conveyed the same by treasurer's deed to David Crawford, a brother of Theophilus, Jr. In 1866 David Crawford quitclaimed to Eliza Crawford, wife of Theophilus, Jr., of said lands, one hundred and sixty acres, describing the same. All the rest of said lands he quitclaimed to George W., Franklin, and Helen A. Crawford, children of Theophilus, Jr. and Eliza Crawford. In the year 1868 Theophilus, Jr., Eliza, his wife, George W., Franklin, and Helen A. Crawford, by a joint instrument containing covenants of warranty, conveyed to Frank Meis of said lands one hundred and sixty acres, and, at about the same time and in like manner to one Vorwald forty acres, the latter subsequently conveying to Meis. The two hundred acres thus conveyed included eighty acres of the lands conveyed by David Crawford to Eliza Crawford and one hundred and twenty acres of the lands conveyed by David Crawford to George W., Franklin, and Helen A. Crawford, and these are the lands involved in the first of the above-entitled actions. At about the same time, the same grantors, by a similar instrument, conveyed to Bernardine Luthmers and others, through various intermediate grantors, eighty acres being of the lands conveyed by David Crawford to George W., Franklin, and Helen A. Crawford, and these are the lands involved in the second of the above-entitled actions. At about the same time the same grantors, by a similar instrument, conveyed to William Bartman and others, through var-

ious intermediate grantors, the remaining forty acres of the lands conveyed by David Crawford to Eliza Crawford, and these are the lands involved in the third of the above-entitled actions. Theophilus Crawford, Jr., died in 1877, and his widow, Eliza Crawford, in 1899. These actions were brought by Charles Crawford and Grace Palmer, the latter the only child and heir at law of Lewis Crawford, one of the sons of Theophilus, Jr., deceased, to recover a one-fifth portion each of all said lands. The widow of Lewis Crawford, now Kate Myers, intervened, praying that whatever interest she may have in said lands be adjudicated and determined. By the decree in the Meis case the plaintiff Charles Crawford was awarded a three-eighteenths interest, the plaintiff Grace Palmer a two-eighteenths interest, and the intervener Kate Meyers a one-eighteenth interest in the one hundred and twenty acres of land which had been conveyed by David Crawford to Eliza Crawford. The petition was dismissed as to the lands, title to which was derived through George W., Franklin, and Helen A. Crawford. In the Luthmers case the decree was for the defendants. In the Bartman case the plaintiffs and intervener were given interests in the forty acres of land involved in the same proportion as in the Meis case. The plaintiffs and intervener appeal in each of the cases. The defendant Meis appeals in the case in which he is defendant. The plaintiffs will be denominated the "appellants." *Affirmed* on plaintiff's appeal. *Reversed* on defendant Meis' appeal.

*Hurd, Lenehan & Kiesel* for appellants.

*Longueville & Kintzinger* for appellee Meis.

*J. B. & Anna M. Utt* and *Lyon & Lyon* for appellees Luthmers and others.

BISHOP, J.—At the outset the rights of the parties undeniably were as follows: The said Theophlius Crawford,

Jr., and Eliza, his wife, "and the survivor of them," were entitled to the possession, use, and income of the property during life. Upon their death their children named would become entitled to the estate as tenants in common, for a gift by a testator with remainder over creates a tendancy in common in the remaindermen after the termination of the life estate. Now, upon the happening of the death of Alexander, one of the remaindermen, his parents, the life tenants, without doubt inherited his one-sixth interest. With this accepted as the situation, we may pass on to the time when the lands were sold for taxes and the tax deed issued to David Crawford. Note may be taken at this point of the contention on the part of appellants to the effect that in the matter of taking title to the estate under such tax deed David Crawford acted solely as a trustee for and on behalf of the life tenants and the several remaindermen, and that the subsequent conveyances by him made were intended to be in execution of his trust, and not otherwise. Accordingly, it is insisted that the effect of such conveyance was simply to restore all parties to their former status, the three remaindermen to whom conveyance was made taking title in trust for themselves and their co-remainderman. Without setting forth the evidence at length or entering upon an extended discussion thereof, we may dispose of this contention by saying that the evidence in the record which we regard as competent does not satisfy us that the relation of trustee and *cestui que* trust existed as contended for. We may proceed, therefore, upon the theory that David Crawford was a stranger to the life estate as well as to the estate in remainder, and that by his tax deed he acquired a perfect title to the property as against both the life tenants and the tenants in remainder. Taking this to be the situation, we may at once inquire what were the rights of the parties under the several deeds as executed and delivered by David Crawford.

First, as to the deed from David Crawford to George W., Franklin, and Helen A. Crawford. We think it clear

that such deed had the effect to vest a perfect title in the gran-

I. REMAINDER-
MEN: right
to purchase
tax title.

tees named therein. It is true, as contended for by counsel for appellants, that where there exists, as between joint tenants or tenants in common, a reciprocal duty of protecting the joint estate, one may not absorb or get rid of the interests of his co-tenant by allowing the property to go to tax sale, and thereunder acquire title to the entire estate through the medium of a tax deed. And this is true whether the tax deed is procured to be executed directly to the tenant or to another through whom such tenant claims as grantee. *Weare v. Van Meter,* 42 Iowa 130; *Austin v. Barrett,* 44 Iowa, 490; *Blumenthal v. Culver,* 116 Iowa, 326; *Phillips v. Wilmarth,* 98 Iowa, 32. It is to be noted, however, that in each of the cases cited, and in others where the like rule is declared, the co-tenants were in possession or entitled to possession, and each was charged with the duty of protecting the joint estate. And it is under such circumstances that payment by one co-tenant is held to be presumably for the benefit of all, and he who pays may charge the several interests of his co-tenants with the proportionate parts which such co-tenants should have paid. Cooley on Taxation, 467. The reason for the rule seems to be that, there being a reciprocal duty on the part of the co-tenants to pay the taxes assessed, and as a part of the taxes for which the land is sold is a claim upon the purchaser's share, the sale is based in part upon his own default, and it would be inequitable to permit him to profit by his own wrong. 11 Am. & Eng. Ency. 1082 (1st Ed.) Here, however the co-tenants in remainder were not in possession, nor did they have any right of possession, and they were not chargeable with the duty and responsibility of making payment of taxes. As between themselves, it cannot be said that there were any reciprocal rights or duties. The duty of paying taxes rested upon the life tenants, and, should one of the remaindermen have seen fit to pay taxes allowed to become delinquent for the protection of the estate, he could not recover any portion of the amount so paid from his co-remaindermen.

There being no duty to pay, there could be no such thing as an enforced contribution. It must be manifest that, as applied to such a case the rule contended for by counsel for appellants can have no force or application. Quite to the contrary, the principle which should be made to govern is that which finds expression in the opinion in the case of *Alexander v. Sully,* 50 Iowa, 192. It was there held that one who, prior to the issuance of a tax deed, had occupied the relation of a co-tenant in remainder, and whose estate had been terminated by such deed without his fault or wrong, may purchase the entire estate of the holder of the tax title; and this he may do for his own exclusive benefit. We are content to follow the doctrine of the case cited, and, giving the same application to the case before us it must be said that there was no restriction upon the right of the grantees of David Crawford to acquire and hold title for their own benefit. This being true, it remains to be said that the title of the present owners, derived through such grantees, is not subject to attack at the hands of plaintiffs and intervener. Passing other matters of defense alleged and insisted upon, we conclude that with respect to the lands under present consideration the decree of the trial court was right, and should be affirmed.

We may consider now the effect of the deed as made by David Crawford to Eliza Crawford. Having in mind the fact that she, with her husband, were simply life tenants under the will of Theophilus Crawford, Sr., we

2. PURCHASE of tax title by life tenant.

think it clear that the deed as made to her could have no other effect than to restore the life tenancy and the ownership of the inherited one-sixth interest in the estate in remainder. As life tenant, it was the plain duty of Mrs. Crawford to protect not only her life estate, but the estate in remainder, by the payment of taxes when due. *Olleman v. Kelgore,* 52 Iowa, 38; *Booth v. Booth,* 114 Iowa, 79. And certainly a life tenant charged with the duty of paying taxes will be estopped, as against the remaindermen, from claiming to be the owner of the fee title under a tax

deed, it appearing that such tenant has failed in his duty to pay the taxes, and has allowed the lands to be sold therefor; and this is true whether title is sought to be taken directly through the medium of the tax deed or by conveyance procured from one who has purchased at the tax sale. In either case the transaction amounts in law simply to a redemption from the tax sale. To hold otherwise would be to open wide the door to gross frauds and abuses, for, while a remainderman may protect his interest in expectancy by making payment of taxes he has the right to rely upon payment being made by the life tenant, and he may, therefore, as against such tenant, give himself no concern during the continuance of the life estate. Cooley on Taxation, 467 (2d. Ed.)

Now, as the deed to Mrs. Crawford had the effect, in legal contemplation, only to redeem the lands from tax sale, and thus restore the prior existing rights, it follows that, speaking strictly, by the deed to the several defendants in these cases in which she and her husband subsequently joined, there was conveyed by them only such interest as they then had, to wit, the life estate covering all the lands thus conveyed, and the one-sixth interest in the estate in remainder derived through the death of their son Alexander. As three of the remaindermen joined in such conveyance, full title was vested in the grantees, subject only to such rights as became reinvested in Charles and Lewis Crawford, as remaindermen, by virtue of the deed from David Crawford to their mother, Eliza Crawford. This the trial court found and decreed, and, further, that the interests thus reinvested in said Charles and Lewis Crawford and the legal heirs of the latter continued in full force at the time of the commencement of these actions —this upon the theory that the statute of limitations, pleaded by defendants, did not begin to run until the death of Eliza Crawford in the year 1899.

The appeal of defendant Meis is addressed to that portion of the decree which denies to him the benefit of the stat-

ute of limitations, and this presents the only remaining ques-

3. OUSTER by re-
maindermen:
limitation:
title by ad-
verse posses-
sion.

tion in the case. It is the contention of appel-
lee that, conceding the effect of the deed to Eliza
Crawford when made to have been as stated,
still his plea of the statute should have been
sustained. On the other hand, it is the position of appellants
that, taking the situation to be as stated, and having it in
mind that, as related to the one-sixth interest in remainder,
the possession of their co-tenants was their possession, and
·hat, as related to the life estate, they had no right of entry
until the termination of such estate by the death of their
mother, it follows that the bar of the statute cannot be suc-
cessfully asserted as against them. Directing our attention
to the question thus made, it is certain that Eliza Crawford
and her husband, as owners of a one-sixth remainder interest,
and therefore co-tenants in expectancy with the other re-
maindermen, conveyed that interest by their deed to defend-
ants. Aside from such one-sixth interest, and strictly speak-
ing, it is to be said that they conveyed no more by such deed
than the life estate interest possessed by them. Now, clearly
enough, it is the general rule that the possession of one ten-
ant in common is the possession of all the co-tenants and in-
ures to the benefit of all. 17 Am. & Eng. Ency. 669 (2d.
Ed.), and cases cited. But that one co-tenant, or a grantee
thereof, may work an ouster and disseisin of his co-tenants,
and, having held adverse possession under claim of right or
·color of title for the limitation period, may assert full title,
and may invoke the bar of the statute in protection thereof
as against his co-tenants, is also well-settled doctrine. *Burns
v. Byrne,* 45 Iowa, 285 ; *Kinney v. Slattery,* 51 Iowa, 353 ;
*Bader v. Dyer,* 106 Iowa, 715. While in such cases an act-
ual ouster must be made to appear, still this does not of neces-
sity mean an actual physical eviction. As was said in the
*Burns Case,* it means "a possession attended with such cir-
cumstances as to evince a claim of exclusive right and title,
and a denial of the right of the other tenants to participate in
the profits." In *Kinney v. Slattery* it appeared that Jane

Dobbins, a widow, died seised of the lands in question in the year 1860. She left as her only heirs at law a son, W. C. Dobbins, and a daughter, Ann E. Dobbins, since married to J. W. Kinney. In 1862 the former conveyed the land as his own to one Dutton, and the defendant Slattery claims under a conveyance from Dutton. More than ten years later Ann E. Kinney commenced her action to recover an undivided half of said land. The defendant pleaded actual, open, and adverse possession for the statutory period. In the course of the opinion it was said that: "The conveyance of the land by W. C. Dobbins as his own, and the .possession taken by his grantee under such conveyance, evinced a claim of exclusive right and title, and .a denial of the right of the plaintiff. This amounted to an actual ouster and disseisin of the plaintiff." So, too, it may be conceded that as a general rule the limitation statute does not begin to run as against a remainderman until the termination of the preceding estate. *Dugan v. Follett,* 100 Ill., 581; *Van Ormer v. Harley,* 102 Iowa, 150. But the rule supposes an uninterrupted continuation of the relation of life tenant and remainderman. As, in the case of co-tenants, it does not apply where there has been an ouster and disseisin by the life tenant, or one claiming by or through him, and this under claim of right or color of title, followed by adverse possession for the statutory period. In the recent case of *Murray v. Quigley,* 119 Iowa, 6, we distinctly held that, especially in view of our statutes giving to remaindermen and reversioners a right of action to settle disputed questions of title notwithstanding the continued existence of the dominant estate, the bar of the statute may be invoked as against a remainderman, who, knowing that his rights are being disputed or assailed, has failed during the limitation period to assert such rights as against one holding possession adversely, and claiming under right or color of title to be the sole owner. It is thought by counsel for appellant that the doctrine thus announced is unsound, and should not be adhered to, but we think otherwise. The rule involves no hardship and the beneficent effect thereof

must be to bring up for settlement disputed questions of title
before becoming stale, and while yet the facts are within
reach of the parties interested. Accordingly, we are content
to give the doctrine this further recognition, and to add there-
to the sanction of our present holding.

We may now turn to the record to ascertain whether, as
contended for by appellees, the facts in the instant cases war-
rant an application of the matters of doctrine announced in
the cases to which we have made reference. It may be noted,
in the first place, that the conveyances by Theophilus, Jr.,
and Eliza Crawford were by deeds of general warranty. The
grantees paid the full value of the property, and at once en-
tered into possession. This continued openly and notoriously
down to the time of the commencement of these actions—a
period of nearly thirty years; and incident thereto they have
paid all taxes and made many and valuable improvements.
All this was well known to plaintiff Charles Crawford and to
Lewis Crawford in his lifetime, and, following his death, to
his heirs. In this connection it may be said that Lewis Craw-
ford became of age about the time the deeds to defendants
were executed, and Charles Crawford became of age about
the year 1876, so that no question of the rights of minors is
involved. Now, it may be conceded that a critical examina-
tion of the records of Dubuque county, aided by other evi-
dence suggested thereby, would have revealed the facts in ref-
erence to the title to the lands in controversy, and that the
grantees of Theophilus, Jr., and Eliza Crawford did not, in
point of fact, obtain full and perfect title to such lands. But
it is essential only to the running of the statute that there be
a good-faith claim of right based upon color of title. It ap-
pears that Meis had no actual knowledge that his title was·
defective; on the contrary, he acted upon the belief that he
had perfect title in all respects, and this continued down to a
short time before these actions were brought. We conclude,
therefore, that, taking into consideration the character of the
conveyances under which appellee holds, the character of his
subsequent possession and the period thereof, the knowledge

of plaintiffs and the intervener in respect of all thereof, a case of adverse possession under ouster and disseisin has been made out. See the cases already cited; also, *Leach v. Hall,* 95 Iowa, 620. This being true, the lapse of time was such as that when these actions were brought the bar of the statute of limitations had long been complete. ·

It follows that in the *Meis Case* the decree must be and it is affirmed on plaintiffs' appeal, and reversed on defendant's appeal. In the *Luthmers Case* the decree is affirmed. In the *Bartman Case,* as the plaintiffs were granted all the relief to which they could, in any event, be entitled, and as the defendants in that case have not appealed, the decree is AFFIRMED.

AFFIRMED on plaintiff's appeal. REVERSED on defendant Meis' appeal.