## C. C. WENGER, Appellee, v. ELIZABETH L. THOMPSON ET AL., Appellants.

**Will:** LIFE ESTATE: POWER OF DISPOSAL. Under a will creating in
1 the wife a life estate in all property, real and personal, with full power of disposal for her own use and the maintenance of the family, she has power to sell and convey the real property at any time during her natural life, especially where there is a further distribution of any property "remaining in her possession and the proceeds thereof."

**Quieting title:** ADVERSE POSSESSION. An action to quiet title based
2 on a claim of adverse possession under a deed conveying absolute title and made in good faith and for an adequate consideration, cannot be defeated by a mere showing that the grantee at the time of the conveyance knew of the possibility that some adverse claim to the land might be made in the future.

**Laches:** One, who, cognizant of all the facts, has slept upon his
3 rights for twenty years, cannot assert an interest in real property against a party in possession under good faith conveyance for that time.

*Appeal from Clarke District Court.*— HON. H. M. TOWNER, Judge.

THURSDAY, NOVEMBER 16, 1905.

ACTION to quiet title to real estate. From a decree in favor of plaintiff, a portion of the defendants appeal.— *Affirmed.*

*Tallman & Crist* and *Stivers & Slaymaker,* for appellants.

*Temple, Hardinger & Temple,* for appellee Wenger.

*James H. Jamison,* for other appellees.

BISHOP, J.— The real estate in question consists of a farm of about 220 acres in Clarke county. In his petition plaintiff recites that he is the owner of the said farm in fee simple; that he holds the same in lawful, exclusive, and adverse possession, and that he and those under whom he claims have so held under claim of right and color of title for more than twenty years; that he has paid taxes, made improvements, etc. It is then averred that, as plaintiff is informed and believes the defendants George O. Thompson, F. A. Thompson, and R. E. Thompson claim some interest in said real estate, and that such claim, as he is informed, is based upon the following facts: That in the year 1878 J. H. Thompson died, testate, seised of said real estate, and leaving surviving him Elizabeth L. Thompson, his widow — who is also made a party defendant in this action — and said defendants first above named, his children. The will of said J. H. Thompson is set out and reads as follows:

I give and bequeath to my wife, Elizabeth L. Thompson, all real estate described as follows: [Here follows a description of lands, which includes with others the lands in controversy.] Also all of my personal property of every kind, of which I may die seised, for her own use, and for the maintenance and education of my children during her natural life, and after her death all said property, both real and personal, then remaining in her possession, or the proceeds of said property, to be equally divided, share and share alike, between all of my children then living. Lastly, I appoint Elizabeth L. Thompson executrix and William J. Hamilton executor of this my last will, with full power and authority to sell and convey any or all of said property to pay all of my just debts, and to apply all the remainder of the proceeds of said property to the maintenance of the family.

It is conceded that said will was duly admitted to probate in said county. It is then alleged that in March, 1883, Elizabeth L. Thompson conveyed the lands in controversy by warranty deed to William J. Hamilton, who entered into possession and continued therein until March, 1900, when he sold and conveyed by warranty deed to R. M. Lewis. In June, 1900, Lewis sold and conveyed by warranty deed to R. W. Meyer and J. E. Barnard, who in May, 1901, and by like deed, conveyed to Elmer E. Barnard; that the latter, by like deed, and in July, 1901, conveyed to Mattie F. Barnard, who, in 1903, with her husband J. E. Barnard, conveyed by like deed to plaintiff. The said Hamilton is also made a defendant, and the decree went against him, and likewise against the said Elizabeth L. Thompson, by default for want of appearance. The defendants George O., F. A., and R. E. Thompson appeared and pleaded jointly, they admit the right of plaintiff to use and occupy the lands during the continuance of the life of their mother, but deny that plaintiff has any further or other interest. Pleading further, and as a basis for affirmative relief, they exhibit the will of their father, and assert that thereunder they are the owners of the fee of the lands, and demand that their title be quieted. The defendants Barnard and Lewis answered, admitting the conveyances made to and by them, and in cross petitions against their codefendants prayed that the relief demanded by plaintiff might be granted.

Upon the trial it was shown that at the time of the death of John H. Thompson the farm was incumbered by two mortgages. It was in a low state of cultivation, and the improvements thereon out of repair. Upon the settlement of the estate, which was in the year 1881, the final report filed made it appear that all the personal property had been exhausted in payment of unsecured debts filed against the estate. It is conceded that the report was approved, and the executrix and executor discharged. Elizabeth L. Thompson continued in the occupancy of the farm

with her children, the eldest one being thirteen years old, and the youngest one three years old. The circumstances of the conveyance by Mrs. Thompson to Hamilton in the year 1883 were that the mortgages had become due and she could not pay them, and that she was considerably in debt otherwise. She was greatly worried, and believed that she would be unable to pay out and save the farm. In this situation she sought a conference with Hamilton, who was her brother, and this resulted in an agreement between them that she should convey the farm and a considerable portion of the stock and grain on hand to him, in consideration of which he should convey to her a near-by farm, owned by him, of about the same number of acres, but of somewhat less value, and clear of incumbrance, together with a lot, with small house thereon, in Osceola, and should pay all her debts, amounting to about $2,000. And, upon being had, such agreement was carried out. Hamilton took possession of the farm in question as his own and occupied the same as owner, paying taxes and making improvements thereon for seventeen years, when he sold to Lewis. Said Lewis, the Barnards, and plaintiff have each successively occupied as owners, paying taxes and making improvements. And all this was with full knowledge on the part of the appealing defendants.

Within our view, it is not necessary to define in precise terms the character or extent of the estate taken by Elizabeth L. Thompson under the will of her husband. The record 1. WILL: life estate; power of disposal. presents but one question, and that is, did Mrs. Thompson, under the will, have power to sell and convey title? This question involves a consideration of the instrument alone, and that it must be answered in the affirmative is clear from the reading, and upon authority. Note the provisions of the will: " I give and bequeath to my wife  .  .  .  all real estate described as follows:  .  .  .  Also all my personal property  .  .  . for her own use, and for the maintenance and education of

my children during her natural life, and after her death all of said property, both real and personal, then remaining in her possession, or the proceeds of said property, to be equally divided," etc. That this amounted to a gift — whether of the fee or of an estate for life is immaterial — with full and unlimited power of disposal at her discretion, seems too plain for argument; and this, especially when construed in connection with the last clause of the will. First, as executrix, she had full power to sell and convey, not only to pay debts, but for the maintenance of the family, and we think it was intended that upon the closing of the estate the power should continue in her " during her natural life." Moreover it will be observed that the grant, if such it be, to the children is not of or pertaining to any property, specific or general, of which the testator may die seised, but has relation to any " remaining in her possession, or the proceeds of said property." *In re Estate of Proctor,* 95 Iowa, 172; *Spaan v. Anderson,* 115 Iowa, 121; *Ernst v. Foster,* 58 Kan. 438 (49 Pac. Rep. 527); *Wiley v. Gregory,* 135 Ind., 647 (35 N. E. Rep. 507).

As this is not an action against Mrs. Thompson to compel an accounting in respect of her trust, and as neither fraud or want of consideration is pleaded, we need not go farther than to follow the deed into the hands of Hamilton. Authority to convey being shown, we must hold that the deed carried the title. But, if this were not true, we must hold that any rights for which defendants might otherwise contend are barred by lapse of time. To avoid the effect of the long time adverse possession on the part of plaintiff and his grantors, defendants rely upon three matters of fact: (1) That Hamilton, having been an executor of the will of J. H. Thompson, was familiar with the terms of such will, and not only knew, but was bound by the fact that Mrs. Thompson had no more to convey than a life estate; that the deed to him, notwithstanding its form, operated only to convey a life estate. (2) That both Mrs. Thompson and Hamilton were

advised by the scrivener who drew the deed that the children had an interest in the land, and it would be necessary to procure quitclaim deeds from them when they became of age. ' (3) That Hamilton, while in possession, was told by one of the defendants, F. A., that he ·claimed an interest in the lands, and expected some day to assert it. ·

It will be sufficient to refer to what has already been said respecting the estate taken by Mrs. Thompson under the will, and the power of disposition conferred upon her by that instrument. It may be added, however, that it is made certain by the evidence that both parties acted in good faith, the one believing that she had the right to sell and convey the fee, and the other believing he had the right to purchase, and both understood that such had been accomplished. Moreover the consideration given and paid was adequate. The scrivener who drafted the deed was called as a witness, and he testified that at the time he had some doubt as to the proper construction to be put upon the will. As to what he may have said on the subject, he testifies that: "Possibly I told him [Hamilton] that to remedy that he could have the boys, as they became of age, give him a quitclaim. I told Mr. Hamilton that a quitclaim deed as they became of age would settle the matter."

2. QUIETING TITLE: adverse possession.

Hamilton, as a witness, testifies that within his recollection nothing of the kind was said on the subject. Now, the doctrine of adverse possession presupposes the existence of defects in the chain of title, and it requires only a good faith claim of right, or color of title, to make such possession available as a basis of perfected title. That Hamilton was claiming title all the time is not questioned, and we cannot say that the possibility that something was said as to the possibility that the boys might have some interest is sufficient to charge him with knowledge that he did not in fact have title, and thus impugn the good faith of his claim.

Coming to the remaining matter of contention, it is to

be said that Hamilton denies with positiveness that F. A. Thompson ever made claim to him of any interest in the lands. Accordingly, if it could be said to be material, the matter was not proven. Conceding, therefore, that the appealing defendants had rights as remaindermen under the will of their father, the record shows that they were at all times well advised as to the situation, including the claim of right asserted by plaintiff and his grantees, and this for fifteen years after the elder defendant became of age and for five years after the younger became of age; and, this being true, we are required to hold that in any event the claim now asserted by them comes too late. *Marray v. Quigley,* 119 Iowa, 6; *Crawford v. Meis,* 123 Iowa, 610.

3. LACHES.

We find no error in the decree, and it is *affirmed.*