ELIZABETH NEVELIER et al., Appellants, v. T. J. FOSTER et al., Appellees.

REMAINDERS: Adverse Possession by Purchaser.—Laches of Remaindermen. The holder of a title or interest in a remainder after life estate is vested with the right of action by which such title or interest may be conclusively settled and adjudicated under Secs. 4223 and 4307, Code, 1897, Secs. 3273 and 3337, Code, 1873, and Sec. 3601, Revision of 1860, and comes within a rule of the general statute of limitations; and neglect to avail himself of his right within the statute is an effectual bar to his claim for relief against the purchaser of the life estate, holding under color of title as to the entire estate in the land.

REMAINDERS: Adverse Possession by Purchaser—Color of Title— Void Decree. A decree quieting title in the purchaser from a life tenant in an action against the remainderman, although void by reason of the remainderman's not being served by notice, yet afforded sufficient color of title to sustain the plea of adverse possession by one relying thereon and asserting possession for the statutory required time, even though he had taken title knowing that there was a possibility of a hostile claim's being made in the future.

REMAINDERS: Adverse Possession by Purchaser—Color of Title— Quitclaim Deed. A quitclaim deed from one obtaining a void decree quieting title against a remainderman is sufficient to give the grantees a color of title, or to sustain a claim of right on which to lay the foundation for acquirement of title by adverse possession.

*Appeal from Audubon District Court.*—J. B. ROCKAFELLOW, Judge.

SEPTEMBER 16, 1919.

ACTION in equity to establish and confirm the plaintiff's claim to title to certain land, and for other equitable relief. On trial, the court found for the defendants, and dismissed the bill. Plaintiffs appeal.—*Affirmed.*

*Dunshee & Haines* and *Graham & Graham,* for appellants.

*Parker, Parrish & Miller, Foster & Foster, Mantz & White, J. H. Ross,* and *S. C. Kerberg,* for appellees.

WEAVER, J.—Thirty years or more prior to the beginning of this action, one Nish and Sarah, his wife, living in this state, separated and were divorced. Nish, with two of the three children of the marriage, removed to Oregon, and the divorced wife, with a daughter, Elizabeth, remained in Iowa, where she soon married one Voiyier. Later, Nish purchased the 80 acres of land now in controversy, taking title in himself; but, under some not clearly developed agreement or understanding, his former wife, with her husband, Voiyier, went into possession of the property. In 1888, Mrs. Voiyier brought an action against Nish, to have the title to the land adjudged to be rightfully in herself, and, upon trial, a decree was entered in her favor, and Nish appealed. Before the appeal was disposed of, the litigation was settled by a stipulation, by the terms of which the title to the land was to be confirmed in Mrs. Voiyier for life, with remainder over to the three children of her marriage with Nish.

In 1892, Voiyier and his wife, having apparently failed to prosper upon the farm, leased it, and quit possession. In the following year, the Green Bay Lumber Company foreclosed a mechanics' lien upon the property, and secured

a sheriff's certificate of sale of the life estate. About this time, Mrs. Voiyier and husband united in a conveyance of the land to T. J. Foster. The conveyance was made upon a blank form of warranty deed, but followed the description of the land with a statement that it was intended thereby to convey all the interest the grantors or either of them had in the land, and the warranty clause was limited to the life estate. The certificate of purchase by the Green Bay Lumber Company in the mechanics' lien foreclosure proceedings was assigned to Foster, and, no redemption having been made, he took a sheriff's deed, conveying to him the life estate. Soon afterward, with the evident purpose of eliminating the interest of the remaindermen in the land, Foster purchased from one Cook his claim of $10 for witness fees taxed in his favor in the litigation between Nish and Mrs. Voiyier, and supposed to have become a lien on the land while the title still stood in the name of Nish. Procuring a fee bill execution thereon, Foster caused it to be levied upon the land. At the sheriff's sale upon the fee bill execution, Foster bid it in, and later took a sheriff's deed. Having secured this deed, Foster brought an action in equity to quiet his title, and on March 1, 1895, obtained a decree quieting in him the title to all the land. In this proceeding, the three children of the Nish marriage were made defendants, and their defaults were entered, as upon proof of service of notice by publication. Question is now raised, and there is room to doubt, whether the service as to Elizabeth Nish (now Nevelier) was sufficient to authorize the decree against her.

In October, 1895, after obtaining said decree, Foster and wife conveyed the land to M. J. Masterton. The language of the granting clause is, "We hereby sell and convey unto the said M. J. Masterton our title to the following described premises," etc.; but the warranty is, "We covenant to warrant and defend the title of said premises

against the lawful claims of all persons whomsoever." Six years later, in February, 1901, M. J. Masterton and wife sold and conveyed the land by warranty deed in the usual form to Mary A. Masterton. Since that date, both Mary A. Masterton and her husband have died, and their right, title, and interest in the land have passed by descent to M. J. Masterton, Stella Huston, and Veda McCall, their only heirs at law. Since the conveyance by Foster on October 17, 1895, the land has been continuously in the possession and control of the Mastertons, claiming to be the owners thereof. This action was begun October 13, 1913.

The plaintiff, Elizabeth Nevelier, is the daughter of the former Mrs. Nish, and is one of the remaindermen mentioned in the stipulation or decree by which the mother acquired the life estate from her former husband. In her petition, she attacks the title acquired by Foster and now held by the Masterton heirs, as having been obtained by fraud, and alleges that the full extent of his right or title, if any, was limited to the ownership of the life estate conveyed to him by Mrs. Voiyier, and asks that her own title as a remainderman be established and confirmed. For reasons hereinafter suggested, we do not prolong this opinion to set out in detail the various charges of fraud relating to the manner and method by which the Foster title was obtained. It is enough at this point to say that they are denied by the answer, and that the truth of such charges is, for the most part, not of controlling importance in reaching our decision.

Answering the petition, the Masterton heirs admit that they assert title to the land through the conveyance from Foster to M. J. Masterton and from M. K. Masterton to Mary A. Masterton, but deny all charges of wrong and fraud on their part. They also plead the statute of limitations, and allege adverse possession by themselves and

their ancestors and grantors from the date of the Foster conveyance for nearly or quite 18 years.

Preliminary to further discussion of the controversy before us, it should also be said that there is no substantial ground in the record for impeaching or questioning the good faith of the Mastertons in taking title from Foster, or their subsequent possession of the premises or their honest belief that they had thereby acquired the absolute owner-ship of the property. The trial court, after hearing the evidence, found the equities to be with the defendants, con-firmed their title to the land, and dismissed the bill.

Appellants' counsel have favored the court with a brief evidencing much care and research in support of the gen-eral proposition that the statute of limitations will not run against remaindermen during the ex-istence of the preceding life estate, and that possession under conveyance from the life tenant is not adverse to the remaindermen, so long, at least, as the life tenant survives.

1. REMAINDERS: adverse pos-session by purchaser: laches of re-maindermen.

That such is the general rule, where the common law upon the subject has not been abrogated or modified by statute, may, for the purpose of this case, be admitted; and we shall, therefore, refrain from extending this opinion to review or discuss the numerous authorities therein to which our attention has been directed by counsel. The rule thus invoked had its origin in the fact that, at common law, a remainderman cannot maintain ejectment or other action of a possessory nature before the termination of the life estate upon which the remainder depends; neither, in the absence of statute conferring that right, can he maintain an action in equity to quiet his title, for, at common law, both title and possession in the plaintiff were necessary to the exercise of such right. See 17 Encyc. Pleading and Practice 306, and cases there cited. Where this rule pre-vailed, it was but justice to hold that the statute of limi-

tations should not run against a remainderman until, by the lapse of the life estate, he became clothed with a right to demand possession. But in this state, in common with many, if not most, other jurisdictions, the hardship thus resulting, not only to remaindermen, but to those who have in good faith acquired some claim or title inconsistent with the rights of the remaindermen, statutes have been adopted by which any person "claiming an interest in real property" may maintain an action against "any person claiming title thereto," and have their respective rights and interests in such property settled and adjudicated. Code, 1897, Sections 4223, 4307; Code, 1873, Sections 3273, 3337; Revision of 1860, Section 3601.

The effect of these provisions upon the rights of remaindermen and upon the operation of the statute of limitations in such cases has, in recent years, been frequently before this court, and it seems now to be well settled that the holder of a title or interest in remainder after a life estate, being vested with a right of action by which such title or interest may be conclusively settled and adjudicated, comes within the rule of the general statute of limitations; and neglect to avail himself of his right within the statutory period is an effectual bar to his claim for relief. *Murray v. Quigley,* 119 Iowa 6; *Garrett v. Olford,* 152 Iowa 265; *Wenger v. Thompson,* 128 Iowa 750, 756; *Crawford v. Meis,* 123 Iowa 610, 618; *Ward v. Meredith,* 186 Iowa 1108. In the last' case cited, we had occasion to go over the ground quite thoroughly, and declined to disapprove this line of precedents, or to readopt the common-law rule. Without repeating the discussion there had, it is sufficient here to say that we adhere to the conclusion there reached.

The necessary effect of this holding is to affirm the decree entered below. As an abstract proposition of law, it may be true, as counsel urge, that the decree quiet-

ing title in Foster was void and of no effect
as against the plaintiff, Nevelier, for lack
of notice giving the court jurisdiction over
her. It is, nevertheless, true that this void
decree was in the form of an adjudication

2. REMAINDERS:
adverse pos-
session by pur-
chaser: color
of title:
void decree.

settling the title in Foster, and a void decree or void deed
affords sufficient color of title to sustain the plea and claim
of adverse possession by one who, relying thereon, has
taken and held the possession for the required length of
time. *Hamilton v. Wright,* 30 Iowa 480; *Chicago, R. I.
& P. R. Co. v. Allfree,* 64 Iowa 500; *McCash v. Penrod,* 131
Iowa 631. And this is true although it should be believed
or found by the court that Masterton took the Foster title
knowing that there was a possibility that a hostile or ad-
verse claim to the property might be made in the future.
*Wenger v. Thompson,* 128 Iowa 750; *Colvin v. McCune,*
39 Iowa 502. Even though the deed from Foster were to

be construed as a mere quitclaim, it was
still sufficient to give the grantee a color of
title, or to sustain a claim of right on which
to lay a foundation for acquirement of title
by adverse possession. *Tremaine v. Weath-

3. REMAINDERS:
adverse posses-
sion by pur-
chaser: color
of title:
quitclaim deed.

erby,* 58 Iowa 615, 620; *Benton v. Dumbarton Realty Co.,*
161 Iowa 600, 608.

Other points made in argument against the defense re-
lied upon by the Mastertons are ruled by the conclusions
we have already announced, and require no further dis-
cussion. None of them are sustainable on the record made.

United with plaintiff's claim for equitable relief is a
demand for judgment against Foster for damages, in the
event that the relief asked cannot be granted.

Assuming that it would be otherwise proper for us to
assess such damages in this proceeding, we must hold that
the same obstacle we have been considering, the statute
of limitations, is an insurmountable bar to the plaintiff's

claim. Foster, so far as the reecord shows, has at all times been a resident of the state, and could at any time have been brought into court for enforcement of the claim now put forth. His alleged wrong and fraud were not perpetrated in secret. His deed from Mrs. Nish (or Voiyier), his sheriff's deed under the mechanics' lien foreclosure, his sheriff's deed under sale on the fee bill execution, his action to quiet title, the decree rendered therein, and his subsequent conveyance to Masterton, were all matters of public record, and so remained for more than 20 years before this action was begun. There is no showing of any concealment or misrepresentation by him to keep the plaintiff in ignorance of these matters, or any other act on his part having effect to toll the running of the statute, and we are disposed to the view that the trial court was right in denying the prayer for money judgment.

No sufficient reason appears for interfering with the decree below, and it is—*Affirmed.*

LADD, C. J., GAYNOR and STEVENS, JJ., concur.