MRS. MARY A. MURRAY et al., v. MARY E. QUIGLEY, Appellee, AND C. D. BEEMAN, et al., Appellants.

Action in Partition and to Quite Title: FRAUD CANCELATION OF PATENT: EVIDENCE. In an action to quiet title where, in granting the relief asked it is necessary to cancel and set aside a patent from the state on the allegation that the same was procured by fraud, the evidence should be most convincing. Evidence considered and held insufficient to establish fraud.

**Same:**   PRESUMPTION OF KNOWLEDGE OF FRAUD:   EVIDENCE.  Where the patentee and his grantees have been in continuous possession of the land since issuance of the patent and until commencement of suit to quiet title, and those claiming fraud in the issuance of the patent during all of the time lived in the immediate vicinity, and the character of the title was a subject of frequent discussion among them, they are conclusively presumed to have discovered the fraud at the time the patent was recorded.

**Same:**   LIMITATION OF ACTION:   EVIDENCE.   Under this state of facts it was the duty of those claiming the fraud to bring their action to set aside the patent within the five year limitation.

**Same:**   RIGHT OF REMAINDERMEN.   Remaindermen out of possession and during the life of those through whom they claim were authorized by the Revision of 1860 and the Code of 1873 to bring an action to determine and quiet their title to real property, and should do so within the statutory period of limitation.

**Co-tenants:**   OUSTER:   ADVERSE POSSESSION.   Where husband and wife are tenants in common, and upon the husband's death the wife conveys the entire property, it amounts to an ouster of the husband's heirs and forms the basis of a claim of adverse possession by her grantee.

*Appeal from Allamakee District Court.*—HON. A. N. HOBSON, Judge.

SATURDAY, DECEMBER 20, 1902.

THIS is an action in partition, and also asking that title be confirmed in the plaintiffs.   The facts necessary to an understanding of the case are, briefly, as follows: On the 16th day of April, 1852, C. P. Beeman purchased of the school fund commissioners of Allamakee county the E. ½ of the N. W. ¼ of 21-97-5, and took a contract therefor in accordance with law.   On the 30th day of April of the same year he and his brother, C. D. Beeman, purchased' of the same party the S. E. ¼ of the N. W. ¼ of 33-97-5, and took a contract therefor.   C. D. Beeman and his wife deeded this last 40 to C. P. Beeman and his wife, Abigail J.

Beeman, now Abigail J. Howell, on the 3d day of March, 1857, and on the 27th day of August, 1857, a patent was issued for the same to C. D. and C. P. Beeman.‘ C. P. Beeman died intestate in 1860, leaving surviving him his widow, Abigail J. Beeman, and his daughter, Harriet Ann Beeman.    September 1, 1860, his widow conveyed the entire 120 acres of land described by warranty deed, and on the 11th. day of April, 1868, it was reconveyed to her by her grantee.   June 1, 1868, a patent was issued by the state to John Quigley for the E. ½ of the N. W. ¼ of 21, which was recorded July 20, 1868; and on the 2d day of June, 1868, Abigail J. Howell and her husband executed and delivered to John Quigley a warranty deed for the three 40's described, and this deed was recorded on the same day.   The plaintiffs claim title through the grantees of John Quigley, and the defendants other than Mary E. Quigley claim as the nearest heirs of C. P. Beeman and his deceased daughter, Harriet, alleging that the interest of Abigail J. Howell in the land conveyed by her was only a life estate, and that they are remaindermen; that the patent issued to John Quigley was obtained by fraud, and is void; and they pray for affirmative relief.   There was a judgment quieting title in the plaintiffs and Mary E. Quigley and ordering the land partitioned.    The defendants other than Mary E. Quigley appeal.—*Affirmed.*

*W. S. Hart* for appellants.

*D. J. Murphy* and *J. F. Dayton* for appellees.

SHERWIN, J.—At the time of her husband's death, in 1860, Abigail Beeman took a one-third interest in his estate for life only, under section 2477 of the Revision of 1860. The daughter Harriet, the only surviving child of C. P. Beeman, died in September, 1861, and upon her death, her mother took a life estate in her property, under section 2498 of the Revision, which is as follows: "Sec. 2498. If the mother be the surviving parent as contemplated in section

three of this act, she shall take only a life estate in the
intestate's property, and after her death it shall go to the
children of her body if there be any had by her deceased
husband, he being the father of the intestate.    If there
be no such children, nor issue of such children in the
descending line, then the intestate's property shall be
divided between the nearest heirs of the father and mother
of the intestate, share and share alike, and after such dis-
tribution is made the same rules shall be applied to any
further distribution thereof, as prescribed in this act."

No question is made as to the estate vesting in the
widow upon the death of her husband and child, nor as to
the then situation of the remainderman.    Soon after he
acquired the patent to the land and took a conveyance
thereof from the Howells, John Quigley conveyed an un-
divided two-thirds interest therein to his brother, Michael
Quigley, by warranty deed, which was duly recorded.
Some eight years thereafter Michael Quigley conveyed
this interest to his wife, Mary Quigley, who left it to the
plaintiffs herein by her will, which was duly probated in
1895.    John Quigley conveyed his remaining one-third in-
terest in the land to his wife, Mary E. Quigley, one of the
defendants herein, in 1896.    During his life C. P. Beeman
made some payments under his contract for the purchase
of the E. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of 21, and at the time of his
death the contract was still alive, and not wholly per-
formed, and, unless he made an assignment of his rights
under this contract before his death, he died the equitable
owner of the land, and his widow and sole heir would take
his interest therein, and nothing more.    But the patent
for this land was issued to John Quigley by the proper
state authority, and, if he was entitled to the patent as
the assignee of the rights of C. P. Beeman under the con-
tract of purchase, the patent vested the absolute title in
him, so far, at least, as the defendants are concerned, and
they have never had any rights as remaindermen.

The contract in question was entered into and the land sold to Beeman under the provisions of the school fund act of 1847, which provided for sales either for cash or on time, under the direction of a school fund commissioner, and for the issuance of a patent by the governor of the state upon the certificate of purchase of the clerk of the district court of the county in which the land sold was situated, that full payment therefor had been made. In accordance with the requirements of this act, the clerk of the district court of Allamakee county issued to John Quigley a certificate under date of June 25, 1868, which is as follows: "Certificate of final payment. Office of Clerk of Dist. Court, Allamakee County, Ia., June 25, 1868. This is to certify that C. P. Beeman purchased of Elias Topliff, school fund commissoner for the county of Allamakee, on the 6th day of April, A. D. 1852, under the provisions of an act of the general assembly of Iowa entitled 'An act to provide for the management and disposition of the school fund,' approved Feb. 25, 1847, and the amendment thereto, the following tract or parcel of land, to wit: E. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of Sec. 21, Town. 97 north, of range 5 west of the 5th principal meridian, containing eighty acres, at $1.25 per acre, amounting to the sum of one hundred dollars, which sum, with the interest accruing thereon, having been paid in full by John Quigley, assignee of C. P. Beeman, as required by law, entitled him to receive from the governor of Iowa, a patent for the land herein described upon the presentation hereof to the register of the state land office. Given under my hand and official seal the day and year first above written. G. P. Eells, Clerk of District Court, by John Ryan, Deputy."

Upon the presentation of this certificate to the governor of the state, a patent for the land was issued to John Quigley, as we have already stated. It is undoubtedly true that a patent or any other conveyance of land which is procured by the fraud of the grantee may be annulled

and set aside by proper proceedings instituted in proper

I. FRAUD: cancellation of patent: evidence.

time, but the acts of public officers which are authorized by law, and their solemn declarations in official certificates which they are required to make, should not be treated lightly, nor should they be declared false except upon the most convincing evidence. The contention that the patent in question was procured by the fraudulent acts of John Quigley and the clerk of the district court who issued the certificate has but slight evidence for its support. It is true that the widow of O. P. Beeman, now Abigail Howell, testifies that her husband had never met John Quigley, and that when Quigley took the conveyance from her she delivered no papers to him other than the deed, but in weighing her testimony on this subject it must be borne in mind that she was testifying to a transaction which occurred nearly thirty years before, and that her testimony contradicts her acts of 1868, when she received from John Quigley the full value of the fee-title of the land, and executed and delivered to him in exchange therefor a deed which purported to convey the title which he had paid for. In addition to this, the record discloses that, notwithstanding her previous acts, she was an interested witness against the plaintiffs by reason of the fact that two children by her late marriage are defendants, and claiming adversely to the plaintiffs. The contract is not before us, nor was it produced on the trial below, and we presume that it is not in existence; and there are some features of the case which indicate that there might never have been an assignment of Beeman's interest therein, but they are not of such a convincing character that we can say that, taken in connection with the testimony of Mrs. Howell, they prove fraud in procuring the patent.

II. It is not necessary, however, to rest our determination of the case on this feature alone. John and Michael Quigley went into possession of the land at once,

and they and those claiming under them have continued

2. SAME: presumption of knowledge of fraud.

in possession to the present time. The defendants have all of the intervening years lived in the immediate vicinity of the land, and have had full knowledge of this possession; and, moreover, some of them, at least, have known, since John Quigley took possession in 1868, that he and Michael were claiming the fee title of the land. The recorded patent was notice to the world that he held the legal title in fee. Nor was this the only knowledge which the defendants had, for it is shown that in conversation with some of the defendants he expressly asserted such ownership, and it was denied by them. So, too, it is shown that the character of the title held by John and Michael Quigley was a subject of frequent discussion among those interested therein, and it is not going too far to assert that the extent of their claims was known to all of the defendants for years, and to some of them for twenty-eight years, before their answer was filed in this case. Yet not until this action was commenced and the answers filed by the defendants did they invoke the aid of the law to right the alleged fraudulent acts of John Quigley and the clerk of the court who issued the certificate upon which the patent was issued, though the fraud, if any there was, was known to them upon the filing of the patent for record; for such fraud is conclusively presumed to have been discovered at that time. *Laird v. Kilbourne,* 70 Iowa, 83.

III. It is contended by the appellees—and, we think, rightly so—that under these conditions it was the duty of the defendants to bring their action to set aside the patent

3. SAME: limitation of action: evidence.

within the five-year limitation period (Revision, section 2740, Code 1873, section 2529). *Bishop v. Knowles,* 53 Iowa, 268; *Laird v. Kilbourne, supra.* The appellants do not controvert this as a general proposition, but they ably contend that the affirmative relief asked by them is simply that their title

be quieted, and that such relief is never barred by the stat-
ute of limitations.    While there is much of plausibility in
the argument advanced, we think it fallacious.    As the
record stands, they have not now, and have never had, a
shadow, even, of title to any part of the land now under
discussion, and during all of these years the plaintiffs and
their grantees have been in possession thereof under a claim
of an absolute title in fee, supported by a recorded instru-
ment, which conveyed to them precisely such a title; and
the defendants, to establish their interest in the land, must
prove the fraudulent procurement of the patent.    In other
words, their position is that, by naming their petition an
action to quiet title, they may have a conveyance annulled
and declared void, the fraudulent character of which has
been known to them for thirty years.    To so hold would be
a judicial destruction of the statute of repose, which would
open the door for endless litigation.

IV.    It is further argued that, as the defendants are
remaindermen, and the life tenant still alive, they have
at no time had such a definite and certain interest in the
4. SAME: rights property as would warrant any interference
of remain-
dermen.        on their part, and that they were, for that
reason, not called upon to assert their rights until this
action was commenced.    The rights of the remaindermen,
however, were vested upon the death of those through
whom they claim, and the defendants are here asserting
such rights, which are no greater or more certain now
than they have been for years, and at all times they have
been authorized by direct statutory enactment to institute
proceedings to determine the question of title.    They
might have proceeded under section 3757 of the Revision
(section 3345 of the Code of 1873), or they might have
brought an action under section 3601 of the Revision (sec-
tion 3273 of the Code of 1873).    The latter section, by its
terms, authorizes reversioners or remaindermen to bring
actions for determining and quieting questions of title, and

is as follows: "An action in the nature of that authorized in this chapter, may also be brought by one having a reversionary interest, or by one either in or out of possession against another who claims title to real property, although the defendant may not be in possession thereof for the purpose of determining and quieting the question of title."

No right to bring a possessory action was therein given, and it is manifest that the purpose of the act and of subsequent ones of the same import was to provide a speedy way for settling disputed questions of title between those rightfully in possession of the land and those who claimed a reversionary interest therein. Without such statutory authority, a reversioner out of possession, and with no right thereto, could not maintain an action against one in possession as a life tenant, and it was undoubtedly the thought of the legislature that the welfare of those interested as well as of the public in general would be best subserved by providing a means whereby apprehended litigation affecting the. use and enjoyment of real property might be at once settled. *Foree v. Stubbs,* 41 Neb., 271 (59 N. W. Rep. 798); *Holland v. Challen,* 110 U. S. 15 (3 Sup. Ct. Rep. 495, 28 L. Ed. 52); *Arndt v. Griggs,* 134 U. S. 316 (10 Sup. Ct. Rep. 557, 33 L. Ed. 918). And, indeed, the purpose and intent of the statute seems to us to reach further than this, and to imply that such questions must be settled within the statutory period. There can, at least, be no hardship in holding such to be the rule in cases where there is no disability, and where the facts upon which apprehended litigation will rest are fully known. And more especially is this true where the possession is or may be held under a title entirely independent of and hostile to the life tenant.

V. The appellees also rely upon title by adverse possession, but as what we have already said disposes of the case so far as the eighty acres of land is involved, we need not discuss this question, though we may say that

we are inclined to the opinion that the claim is good under the facts presented here, though we do not definitely so declare.

VI.   The S. E. ¼ of the N. W. ¼ of 33 was patented to C. D. and C. P. Beeman, and C. D. and his wife conveyed their interest therein to C. P. and his wife, Abigail, and 5. COTENANTS: they became tenants in common of the forty, ouster: adverse possession. as did also Abigail and the reversioners, and her conveyance of the entire forty to Quigley in 1868 was an actual ouster of her cotenants, and continued possession thereof under color of title and claim of ownership for the statutory period barred the defendants. *Kinney v. Slattery*, 51 Iowa, 353; *Burns v. Byrne*, 45 Iowa, 285; *Nelson v. Davis*, 35 Ind. 474.

The judgment of the district court is *affirmed*.