MARGARET CLARKE, Appellant, v. JOHN H. DIRKS et al., Appellees.

**TENANCY IN COMMON:** Rights of Co-Tenants—Ouster—Deed to Entire Premises—Adverse ·Possession. The delivery by one co-tenant to a stranger, and the recording of an unqualified warranty deed *of the entire premises held in common,* followed by possession in the grantee, under the good-faith belief that he is the absolute owner, works a complete ouster of all other co-tenants of the grantor, and an adverse possession in grantee, which, if continued openly and without interruption for ten years, bars the title of the ousted co-tenants.

PRINCIPLE APPLIED: In 1875, upon the death of their father, eight brothers and sisters inherited the land in question. One, a half-sister to the others, had, for many years, been wholly separated from all other members of the family, and her residence was unknown to any of them. She was equally without knowledge of the residence of her father and seven brothers and sisters. This absent sister was overlooked in settling the estate, there being, however, no personal property. In 1880, the seven children agreed that, if they found the other sister, certain of them would, in stated sums, raise $200 for her as her share in the land, and at this time (1880), and in 1883, conveyances were so made that a brother Frank owned all the land except the absent sister's share. The absent sister was found in Canada, in 1886, eleven years after the father died, and she was then informed of the land left by her father. Some $80 was sent to her by two of the heirs, as payment on the $200. She accepted it without comment. She was told then that the land had been conveyed to Frank. In 1891, Frank, by absolute warranty deed, which was at once recorded, conveyed the land to one Dirks, who went into immediate possession and always thereafter remained in possession, and at all times in good faith believed he was the absolute owner; until, after the lapse of more than 20 years from the date of the deed from Frank, the absent sister sought, by partition, to recover her share in the land. For the first time, Dirks then learned of this absent sister. *Held,* the conveyance by Frank to Dirks was an ouster of his co-tenant, the absent sister, and the possession by Dirks was adverse, and, as it had continued openly and without interruption for more than 10 years, the title of the sister was extinguished.

LIMITATION OF ACTIONS: Real Property—Acts of Ouster by Co-
Tenants—Adverse Possession. A co-tenant may, by his acts of
entry or possession of the property held in common, with the
express or implied knowledge of the other co-tenants, so declare
his intentions to exclude his co-tenants from all interest in the
property as to work an ouster of such other co-tenants and start
the statute of limitations against them. So held where one co-
tenant absolutely sold the entire premises.

PRINCIPLE APPLIED: See No. 1.

ADVERSE POSSESSION: Hostile Character of Possession—Extent
of Claim—Presumption. One entering into possession of land is
presumed to do so under a claim as broad as the provisions of the
deed under which he claims title. So held where grantee took
possession under an absolute deed from a co-tenant, supposing the
grantor was the absolute owner.

PRINCIPLE APPLIED: See No. 1.

*Appeal from Jones District Court.*—MILO P. SMITH, Judge.

FRIDAY, NOVEMBER 17, 1916.

ACTION in partition. Opinion states the facts. Judgment
for the defendant in the court below. Plaintiff appeals.—
*Affirmed.*

*Remley & Remley,* for appellant.

*Doxsee & Doxsee,* for appellees.

GAYNOR, J.—Plaintiff is the daughter of one John Bailey,
deceased. She claims to be the owner of an undivided one
eighth of a certain 40 acres of land, of which he died seised.
She brings this action in partition.

1. TENANCY IN
COMMON: rights
of co-tenants:
ouster: deed to
entire premises:
adverse posses-
sion.

John Dirks, the defendant, denies that
the plaintiff has any interest in the land, and
alleges that he is the owner through mesne
conveyances from the children of the said
John Bailey, except this plaintiff, and as against her claim,
he pleads adverse possession for the statutory period.

The evidence discloses the following facts:

Plaintiff's father, John Bailey, had eight children: Margaret, the plaintiff; Kate, Frank, Elizabeth, Mary, John, Louise and Phillip. He died February 5, 1875, seised of the real estate in controversy, with other real estate, and leaving surviving him these eight children and his wife. He died intestate. His wife was appointed administratrix of his estate, and, on August 6, 1890, filed her final report, which shows no personal property for distribution. In the administration of the estate, it was found necessary to sell, and, under the order of the court, the administratrix did sell, certain of the real estate for the payment of debts. A suit was instituted in the court by the administratrix for this purpose. It appears, also, that a certain portion of the land was set off to the widow as her distributive share. An exact description of the land sold for the purpose of paying debts and set off to the widow is not material to this controversy. Upon the filing of her report, the administratrix was discharged, and the estate closed. On March 9, 1880, Mary, Louise, Elizabeth and Kate, children aforesaid of John Bailey, deceased, quit-claimed their interest in the land in controversy to their brothers, Frank and John. This deed was recorded February. 21, 1881. On the same day, the interest of the other heirs, except plaintiff's, was conveyed to them, so that thereafter, John and Frank were the owners of the interests of all the heirs, except Margaret, in the land in controversy. On January 13, 1883, John Bailey, one of the grantees above named, conveyed this land to his co-grantee, Frank Bailey, by warranty deed. Frank Bailey thereafter continued to occupy it until February 16, 1891, when he conveyed the property, by warranty deed, to the defendant John Dirks. This deed was duly recorded on the 2d day of March, 1891, and contained all the usual covenants of seisin, and warranted the premises against the lawful claims of all persons whomsoever. John Dirks paid full consideration for the land at the time of the purchase. He did not know of Margaret Clarke, the

appellant, or that she claimed any interest in the land; nor did he learn this fact until the suit was brought. John Dirks immediately took possession of the land, and has occupied and cultivated the same ever since. He has paid taxes, tiled and drained the land, kept up the fences, mortgaged the land, and treated it as his own, ever since he received the deed from Frank Bailey.

The evidence discloses that Margaret Clarke, the plaintiff, is 68 years old, and resides in the township of Galloway, province of Ontario; that her father, John Bailey, deceased, moved to Iowa in 1865, from Rochester, New York; that she was 19 years of age at the time; that John Bailey had been twice married; that plaintiff was a child of the first union; that, when he moved to Iowa, he took all his other children and his second wife with him; that plaintiff did not go, but went to her present residence, and has remained there ever since. She has never been in the county in which this land is situated. She knew that her father moved to Iowa, but did not know in what part of Iowa he had taken up his residence, and never knew, previous to his death, where he resided in Iowa. She never corresponded with him nor with any of her brothers and sisters. She says she did not know, at the time of his death, where he lived or where he died; that she learned of his death 26 or 27 years before this suit was instituted; that, after learning of his death, she made no inquiry concerning his estate; that she never conveyed her interest in her father's estate to anyone. It appears, further, that none of the family knew where the plaintiff resided until about the year 1886, 11 years after the father's death. It appears that, at the time these conveyances were made by the several heirs to John and Frank, it was stipulated and agreed between them that each should pay to Margaret, the plaintiff, a stipulated sum, which was thought by them to be her interest in the land conveyed. The amount agreed upon was $200. It was agreed that each of the five of the above heirs should pay to her $40. In 1886, Frank wrote the plaintiff, telling her of her

father's death, and enclosing her $40 as his share, and $40 claimed to represent the amount due her from her sister Mary. Though the letter is not in evidence, she testified that she heard of her father's death in 1886. She was asked this question:

"Were you given any share of the proceeds of the property which belonged to your father when he died? If so, state how much was given and by whom. A. Michael Faust, my brother-in-law, husband of my sister Mary, paid me $50, and my brother Frank also paid me $50."

She was asked the following question, and answered:

"When did you first find out you had any interest in land in Jones County, and from whom did you find out the same? A. 24 or 25 years ago, my brother Frank told me when he was visiting me, which was some years after the property had been distributed."

She further testified:

"I never received any money from Frank which he said was my share in the property left by my father, except the $50 already mentioned. He said the land had been sold, but my share of the proceeds had been overlooked, and my name omitted as one of the heirs. I received from my brother Frank Christmas presents, sometimes $5, sometimes $10, enclosed in letters saying it was a present. Some years he would send some and others none—I didn't keep an account of it."

It appears also from the record that, in 1887, Frank visited his sister, the plaintiff, at her home in Canada. He claims that he told her what had been agreed upon when the property was sold; that the five agreed that, if they heard from her, they would make up $200; that he had sent her $40 of his own money and $40 for Mary. He was asked this question:

"Did you tell her at that time (in 1886) of all the heirs deeding this property to you? A. Yes, sir. Q. What did you tell her this $200 was for, that the heirs were going to pay

her? A. That was her share out of the property—her share in the land we are having the lawsuit about. Q. Did she raise any objection in the matter? A. No, sir, she didn't. She didn't say she was satisfied; she made no objection. This was after I had paid her the $40."

Upon this record, the court found for the defendant, and dismissed plaintiff's petition.

There is practically no dispute in the facts. The only question here for our determination is, Does this record show adverse possession in Dirks, such as will bar the plaintiff's claim to an interest in the land?

When John Bailey died, all his children, including the plaintiff, became tenants in common of the property in controversy. When the children quitclaimed their interest only in the estate to Frank and John, we may assume that Frank and John became tenants in common, then, with the plaintiff in this property. When, in 1883, John conveyed the property in question to his brother Frank, we may assume, under the peculiar facts of this case, that Frank then became tenant in common with his sister, the plaintiff. When, however, in 1891, Frank conveyed the premises in question to the defendant Dirks, a stranger, who had knowledge of Frank's tenancy, and executed to him a warranty deed, with covenants of seisin in Frank, warranting the premises against the lawful claims of all persons whomsoever, a different question arises. The question suggested is, Did John Dirks then become a tenant in common with the plaintiff? Or did the making of this deed by Frank to Dirks work an ouster of the plaintiff and start the statute of limitations against her? Dirks, by himself or tenant, has been in possession of this land ever since. Dirks knew nothing of the plaintiff, at the time he accepted the deed from Frank. He entered into the possession as the sole owner of the premises, upon receipt of the deed, has occupied the same ever since, cultivated the entire premises, tiled a portion, rebuilt fences around it and kept them in repair, mortgaged it as his own, and in every

way asserted, and, we think the record shows, believed, that he was the absolute owner of the property. The record further shows that Frank, at the time he made the deed to Dirks, told him that he had acquired the interest of all the other heirs. When Dirks took possession, he claimed to own the fee to all the land, and so believed up to the time this action was commenced.

The claim of the plaintiff is that, as the entry of the heirs through whom Dirks claims title was not adverse to the plaintiff, their possession, after entry, was, therefore, not adverse; and defendant Dirks, after conveyance to him, stood as the others stood, a tenant in common with the plaintiff. The general rule is, the entry and possession of one tenant in common is the entry and possession of all. Where one tenant in common enters into possession of the property, his entry and possession are rightful, but are held to be for the use and benefit of all his co-tenants. Mere occupancy by a co-tenant for any number of years does not, in and of itself, work an ouster of the co-tenants, nor disseise them of their interests. This is the general rule, to which there are exceptions. A tenant in common may disseise his co-tenants of a whole or a part of the common estate, by hostile entry and possession for the statutory period. His possession, being rightful, as that of a tenant in common, ordinarily would be held not antagonistic to the rights of his co-tenants, and, nothing further appearing, the occupancy would be held to be that of a tenant in common, and not adverse. But a tenant in common may, by his acts of entry and possession, so declare his purpose to hold the possession of the property to the exclusion of his co-tenants, may so assert and claim a right to it, to the exclusion of his co-tenants, that years may ripen in him a title by adverse possession. In order to accomplish this effect in law, the tenant in possession must do some act which the law deems equivalent to an ouster. Or, in other words, the presumption that the possession of one tenant in common is

2. LIMITATION OF ACTIONS: real property: acts of ouster by co-tenants: adverse possession.

the possession of his co-tenants, and the occupation deemed to be in conformity to his right and title as a tenant in common, is a rebuttable presumption. If there is an actual ouster of one tenant in common by another, upon actual ouster, possession becomes adverse, and, if continued for the statutory length of time, bars the right of his co-tenants in the property.

This, however, involves the thought that the right and claim to the possession, adverse to the claim of the one who is to be barred, were known to the one to be barred, or the facts are such as charge notice to the one affected. Courts are not all agreed as to what constitutes an ouster as between co-tenants. Some hold that sole and uninterrupted possession of the property, taking the rents and profits, with the knowledge of the other co-tenants, continued for a long series of years, without asserting or claiming any right to possession, if unexplained or controlled by any evidence tending to show a reason for such neglect or omission to assert right, will furnish evidence from which a jury would be entitled to infer an actual ouster, and adverse possession. See *Lefavour v. Homan*, 3 Allen (Mass.) 354.

It is also held by some courts that if, with a knowledge of his co-tenants, he enters upon the land under claim of exclusive right, and maintains his possession to the exclusion of his co-tenants for the statutory period, this will amount to a disseisin, which will give the disseisor a title by adverse possession. See *Bellis v. Bellis*, 122 Mass. 414.

No particular length of time of possession of one co-tenant will, in and of itself, work a disseisin of the other co-tenants. Something must affirmatively appear that indicates a purpose to assert title adverse to the co-tenants, knowledge of which is chargeable to the other co-tenants, before an ouster can be held to have taken place, and the statute of limitations started, on which title by adverse possession can rest.

In *Rutter v. Small*, 68 Md. 133 (6 Am. St. Rep. 434), the rule is laid down that, where several persons have a right in

common to enter and possess real estate, and one of them enters generally, it will be an entry for all, for the reason that the entry shall always be presumed to have been taken according to the right. Yet if, by overt, hostile act, or conveyance, the party entering or conveying distinctly asserts title to the entirety, adverse to the rights of his co-tenants, a disseisin of the other parties, whether joint tenants or tenants in common, may be effected.

See *Burns v. Byrne,* 45 Iowa 285; *Moore v. Antill,* 53 Iowa 612; *Murray v. Quigley,* 119 Iowa 6; *Crawford v. Meis,* 123 Iowa 610; *Stern v. Selleck,* 136 Iowa 291, 295; *Schoonmaker v. Schoonmaker,* 154 Iowa 500; *Sagen v. Gudmanson,* 164 Iowa 440; *Hanson v. Gallagher,* 154 Iowa 192.

So far, we have considered only the question of ouster between those who are conceded tenants in common; that is, where one who is conceded to be a tenant in common with another, seeks to use his possession as an instrument with which to destroy the rights of his co-tenant. This doctrine announced rests upon the thought, which involves a familiar principle of law, that, where one enters upon land, he is presumed, unless the contrary appears, to enter and hold possession under the title which his deed purports upon its face to convey.

3. ADVERSE POSSESSION: hostile character of possession: extent of claim: presumption.

These children of John Bailey were, upon his death, tenants in common of the property which he left. Each derived whatever interest he had through inheritance from the common ancestor. Each had such an undivided interest in the property as the law at the time gave him as heir. Each is presumed to have entered upon the land as a tenant in common, under the title acquired from the common ancestor. Therefore, the presumption obtains that such possession is not adverse. But, as said before, even between tenants in common, the entry and possession of one may become adverse to the others by actual ouster, or by evidence which indicates to the others a purpose, by overt act or deed, to claim and

maintain an exclusive right as against all, thereby working an ouster, which, if continued for the statutory period, ripens into title. It is not necessary in this case to discuss or determine what overt acts are necessary to work an ouster, as between recognized tenants in common.

In *Bader v. Dyer*, 106 Iowa 715, Augustus Dyer and Elizabeth Dyer were, through conveyance, joint owners of 160 acres of land. The wife died in 1864. The husband lived thereon for 20 years, when he conveyed his interest to one Jesse A. Anderson, and received a mortgage for the purchase price. The defendants in the suit were the grantees of Anderson. The plaintiffs in the suit were a sister and a brother of Mrs. Dyer's, and brought the suit to recover an interest in the land as the heirs of Mrs. Dyer, claiming an undivided interest in the land as such. In this case, quoting from *Burns v. Byrne*, 45 Iowa 285, the court said:

"That the seizin and possession of one tenant in common are the seizin and possession of the others. One can never be disseized by another without actual ouster. By actual ouster is not meant a physical eviction, but a possession attended with such circumstances as to evince a claim of exclusive right and title, and a denial of the right of the other tenants to participate in the profits. An actual ouster and consequent adverse possession might be inferred from sole possession, and an exclusive reception and enjoyment of the rents and profits, with the knowledge and implied acquiescence of the other tenant in common, for the period of 10 years. The rule of that case has been followed frequently in this state" (citing authorities).

In this case, it was held that Dyer failed to establish such overt acts of ownership, with the knowledge of the plaintiff, as amounted to an ouster, and he was held to be a tenant in common. The conveyance to Jesse A. Anderson was made in 1896. Therefore, the statute of limitations had not run as to him. The case was decided in 1898. His interest was

not adverse for the statutory period, and was not available to him.

This brings us to a consideration of the rights of Dirks as grantee, under a warranty deed to the entire premises. This is not a case where one who is recognized as a tenant in common, afterwards attempts to claim that his occupancy was adverse to his co-tenants. Dirks did not enter as a co-tenant, or a tenant in common. He entered under a deed which purported to convey to him the fee title. He is presumed to have entered and claimed under his deed. There is nothing to show that he knew of any adverse claim to his right, nothing to indicate that he had reason to suppose that the interest conveyed to him was other or less than appeared upon the face of his deed. The very act of conveyance by Frank Bailey to Dirks was an act of ouster. The taking of the warranty deed by Dirks and entering and retaining possession constituted an act of ouster as to this plaintiff. The filing of the deed for record was notice to the world of the title conveyed.

As said in *Rutter v. Small,* supra:

"In this case, the undisputed facts show that Small entered into possession under a deed from the devisees of Stein conveying to him the entire lot in fee; and that he and the defendants claiming under him have been in the exclusive possession and ownership of the lot from that time to the present, a period of more than 20 years. It can hardly be necessary to say that, where one thus enters under a deed conveying the entire property by metes and bounds, his entry and claim of title and possession are to be construed as coextensive with the terms of his deed."

In *Prescott v. Nevers,* 4 Mason 326, 330, Judge Story said:

"There can be no legal doubt that one tenant in common may disseise another. The only difference between that and other cases is that acts which, if done by a stranger,

would *per se* be a disseisin, are, in the case of tenancies in common, perceptible of explanation, consistently with the real title.   Acts of ownership are not, in tenancies in common, necessarily acts of disseisin.   It depends upon the intent with which they are done, and their notoriety.   The law will not presume that one tenant in common intends to oust another. The fact must be notorious, and the intent must be established in proof.''

In this case, a distinction is clearly recognized between the possession and assertion of ownership by a tenant in common against another tenant in common, recognized as such, and the possession and assertion of title by a stranger, who has received a deed purporting to convey to him a fee title in severalty, under which possession is taken and held for the statutory period.   See *Frick v. Sinon*, 75 Cal. 337; also *Kinney v. Slattery*, 51 Iowa 353.   In this latter case, the mother died seised of certain land, leaving surviving her a son and daughter as her only heirs.   On the 23d day of June, 1862, the son conveyed the land as his own, by deed, with the usual covenants of warranty, for a full consideration.   The defendant held title by a regular chain of conveyance from the son's grantee.   On the 13th day of December, 1875, the daughter commenced an action to recover an undivided one half of the land.   The defendant answered, setting up ouster and adverse possession.   This court said, in substance, that the conveyance of the land by the son as his own, and the possession taken by his grantees under such conveyance, evinced a claim of exclusive right to title, and a denial of the right of the plaintiff; and that this amounted to an actual ouster and disseisin of the plaintiff.   The court further said:

"The record of the deed from W. C. Dobbins (the son) to Dutton, accompanied by actual and notorious possession of the land by his grantees, was notice to the plaintiff of the adverse claim.   She was charged with notice of what the deed conveyed, and all the grant acquired under it.''

It is recognized that there must be first an ouster of the

tenant in common, to start the statute of limitations. An ouster, however, actual or constructive, followed by continued possession under color of title and claim of right for the statutory period, bars the claim of those who otherwise would be co-tenants in the property. Until there is an ouster of the co-tenant, the tenant in possession acquires nothing by his possession. But where a legal ouster occurs, an actual or constructive ouster, and possession is taken under a hostile claim, a continued, uninterrupted, adverse possession for the statutory period, under color of title or claim of right, works an absolute bar. *Murray v. Quigley,* 119 Iowa 6, 7. See *Leach v. Hall,* 95 Iowa 611. In this case, there was an assertion of right to a co-tenant, with adverse possession opposing his right. It is said:

"It is contended in argument that, as plaintiffs and defendant Hall are tenants in common, and as there has been no ouster, Hall should not be charged with rent. If there had been no ouster, as claimed, then appellant's position is undoubted. But where one tenant in common ousts his cotenant, he is then liable for the rents and profits, although none have been collected. As has been stated, Orinda and Emma Leach conveyed the property in question, by warranty deed, to defendant Hall, June 20, 1890. Hall immediately took possession thereof, claiming to be the owner, and has since used and occupied the same as such. This, in law, amounted to an ouster." (Citing authorities.)

We cite this only on the question of ouster, for it is only upon ouster, actual or constructive, that the statute begins to run.

In *Stern v. Selleck,* supra, this court said:

"Ordinarily, the making of a deed by one co-tenant purporting to convey the entire title will amount to an ouster."

The rule is that, where one co-tenant in possession conveys the entire fee in the land, by warranty deed, to a stranger who knows nothing of the limitation upon his title, and surrenders possession to the stranger, and the stranger enters into

possession under the deed, believing that he has full title to the property, the presumption is that he enters under the terms of his deed as fee owner, and a complete ouster has been effected. A continued, uninterrupted, adverse possession for the statutory period thereafter, ripens in him a title against the adverse claims of all others. The statute of limitations is a statute of repose.

In the case at bar, for over 20 years after the deed had been executed and possession surrendered and taken, and after plaintiff had learned of her father's death, after she was informed that he had left some estate, after she had received money purporting to be a portion of her share of the estate, after the deed had been on record under which the defendant claims, after she had been put upon inquiry touching her rights in this land, she remained silent, asserting no claim to the property, as co-tenant or otherwise. Defendant's possession has been continuous, open, uninterrupted and adverse, under claim of title (for we must assume that his claim was as broad as the provisions of the deed under which he took and claims title, and the evidence on the trial affirms this presumption).

It follows, therefore, the plaintiff is now barred from asserting any right to the property in question as against the claims of this defendant. The court below so held, and we approve its findings. The judgment is therefore—*Affirmed.*

EVANS, C. J., LADD and SALINGER, JJ., concur.