MARY S. WARD et al., Appellees, v. R. M. MEREDITH et al., Appellants.

REMAINDERS: Rights of Remainderman—Adverse Possession by
1  Purchaser. While a remainderman, whether vested or contingent, cannot maintain an action of ejectment, or other actions of a possessory nature, before the termination of a life estate upon which the remainder depends, and the contingent remainderman cannot be granted a decree quieting a fee in him during the existence of the life occupancy, yet, during the past 50 years, under the provision of Sec. 3601, Revision of 1860, Sec. 3337, Code of 1873, and Secs. 4223 and 4307, Code, 1897, there has been expressly extended to "any and all persons claiming an interest in real property" the right to bring an action against any person claiming title thereto, and to have their respective rights and interests in such property settled and

determinèd, and such a remainderman was included in "any person claiming an interest in real property," and a court of equity could have determined the nature and extent of his interest, and protected it against adverse claims.

QUIETING TITLE: ''Interest in Property''—Remainders. The application of the statute, Sec. 3601, Revision of 1860, Sec. 3273, Code of 1873, and Sec. 4223, Code, 1897, authorizing a suit in equity by any person claiming an interest in land, to settle disputes involving the validity of his claims, cannot be avoided by saying that a remainder is a mere hope or expectancy or possibility, and not to be technically classed as "an interest in property," as the word "interest" has a much broader and comprehensive meaning than "title," and includes any right in or to the property, dependent 'upon a contingency; and a remainder is such an interest in land, and may be conveyed as such.

LIMITATION OF ACTIONS: Disabilities, Etc.—Laches. All statutes of limitation are based on the theory of laches, and no laches can be imputed to one who has no remedy or right of action.

ADVERSE POSSESSION: Duration of Possession—Laches of Remaindermen. Where the title of defendants was acquired in good faith, and upon payment of the full value of the land, and had stood unchallenged for 50 years, and had been in continuous, exclusive, open, and notorious possession of successive grantees, under color of title and claim of right, *held* that an action would not lie by remaindermen, to establish their title, 6 years after death of the life tenant, where said remaindermen had taken no steps to have the nature and extent of their interest determined.

*Appeal from Taylor District Court.*—THOS. L. MAXWELL, Judge.

JULY 7, 1919.

ACTION in equity to establish plaintiff's alleged title to a fractional interest in certain land, and for partition thereof. Decree substantially as prayed, and certain of the defendants appeal. The opinion states the material facts.— *Reversed.*

*Haddock & Son, W. M. Jackson,* and *H. P. Jaqua,* for appellants.

*Fremont Benjamin, Verne Benjamin, John A. Titsworth,* and *Frank Wisdom,* for appellees.

WEAVER, J.—In the year 1858, William G. Meredith and Joseph B. Meredith, brothers, obtained title as tenants in common to 330 acres of land in Taylor County of this state. About the time of this purchase, they took possession of the land, but made their several homes and improvements upon different 80-acre tracts. William brought with him a wife and child, and Joseph soon married Naamah G. Ward, daughter of Jabez B. Ward. In 1861, Joseph B. Meredith died intestate, survived by his wife, Naamah G., and an infant son, Joseph B. Meredith, junior, his sole heir, who also died, a few months later. Under the statute of descent and distribution of intestate property, as it existed at the time in question, the share of the widow was limited to a life estate in a one-third part of her husband's property. It follows that, subject to this life estate in his mother, the infant Joseph B. Meredith, Jr., succeeded to the fee of the entire undivided share which his father held in common with William G. Meredith. At the death of the infant Joseph B. Meredith, Jr., the descent of the property was controlled by another statute then existing, which provided that, upon the death, intestate, of a person leaving neither wife nor children, his estate should pass to his father and mother, if they survived, or the survivor of them, if either be dead; but if such survivor was the mother, she took a life estate only, and at her death, it should go to the children of her body had by her said deceased husband, and in the event there were no such children nor issue of such children, "then the intestate's property shall be divided between the nearest heirs of the father and mother of the intestate, share and share alike." Revision of 1860, Sections 2496, 2498. At

the date of the death of Joseph, junior, the parents of his
deceased father were both dead, and the only heirs of Jo-
seph, senior, were his brothers, William G. Meredith, Thom-
as J. Meredith, and a sister, Margaret Miller. At the same
date, the nearest living relative and the only heir expectant
of Naamah G. Meredith, mother of the deceased child, was
her father, Jabez Ward, who lived until the year 1876. After
the death of Joseph B. Meredith, senior, his widow, Naamah
G., and his brother, William G., continued to occupy and
use the land in common, until about the year 1865. On
April 11, 1865, Jabez Ward, whom we have mentioned as
the nearest living relative and heir expectant of the mother
of the deceased child, Joseph, junior, conveyed to his said
daughter all his right, title, and interest in the land now in
controversy. This deed was at once duly recorded. Later
in the same year, Naamah G. Meredith brought an action
in the district court for the partition of the land. In her
petition, she recited the acquisition of the title to an un-
divided half of the land by her husband in his lifetime, his
death, intestate, the subsequent death of the child, intestate,
the conveyance to her by Jabez Ward, her nearest relative
and heir expectant; and alleged that, through this course
of descent and transfer of the title and ownership, she was
then the absolute owner of one half of the undivided half
of the land of which Joseph B. Meredith, senior, and Joseph
B. Meredith, junior, successively died seized; and that, as
the surviving parent of the latter, she was also the owner
of a life estate in the other half of the undivided half of the
land. To this action, William G. Meredith, Thomas J. Mer-
edith, and Margaret Miller were made defendants; the first
named, as we have seen, being one of the original purchas-
ers of the land, and said three defendants together being the
nearest relatives and only heirs then living of Joseph B.
Meredith, senior, deceased. This action was prosecuted to a
decree, which was entered on March 25, 1867. By this de-

cree, one half of the entire body of the land was set apart to William G. Meredith as his sole property. Of the remaining portion of the land, the plaintiff, Naamah G. Meredith, was adjudged to be the owner in fee of one half, which was set apart to her as her sole property, and the owner of a life estate in the other half thereof, which was also set apart for her use as life tenant. No appeal was taken from this decree, and actual partition of the land was made according to its terms. Naamah G. Meredith assumed the separate possession and use of the property awarded to her. and continued therein until 1873, when she sold and conveyed all the land so set apart to her to William G. Meredith. The conveyance was made by deed of warranty for that part of the land of which she had been adjudged the owner in fee, and by quitclaim of the part set apart to her for life. These deeds were also promptly recorded. It is agreed that William G. Meredith made this purchase in good faith, believing that he thus acquired a complete and perfect title in fee to all of the land which he and his deceased brother had formerly owned in common, subject only to the remainder owned by Thomas J. Meredith and Margaret Miller in that part of the land in which Naamah G. had been adjudged to have a life estate. It is also agreed that he paid for said conveyances the fair and full value of the land at that time. After thus disposing of the land, Naamah G. removed to the state of Indiana, where she maintained her residence until her death, on August 27, 1910. After the death of her husband, Joseph B. Meredith, senior, she never remarried. Her surviving heirs are a sister, Mary S. Ward, a brother, Hiram B. Ward, and several nephews and nieces. It further appears without dispute that Jabez Ward, father of Naamah G. Meredith, died in the year 1876, and that the heirs surviving him were Hiram B. Ward, Rebecca Ward, Emily Ward, Mary S. Ward, and the said Naamah G. Meredith. After the conveyance by Naamah G.

to William G., the latter continued in possession, claiming to be the owner of the land, and exercising the usual acts of ownership, until he died, testate, in September, 1876. By his will he devised all his said real estate to his children, who subsequently sold and conveyed the same to various grantees, who took and held possession thereof under color of title and claim of right, without notice or knowledge of any conflicting claims by the present plaintiffs, for a period of about 40 years. The grantees in possession of the land through this long period have made many and valuable improvements thereon. The plaintiffs in this action are Mary S. Ward, sister of Naamah G.; and several others, who are children and heirs of other brothers and sisters, now deceased. Mary has personal knowledge and recollection of the making of the deed by her father Jabez to her sister Naamah; but neither she nor any of the other plaintiffs ever asserted any right in the property adverse to the defendants until this action was begun, in 1916. Indeed, while apparently knowing all the essential facts, they seem not to have actual knowledge that any legal right had thereby accrued to them, until it came to them "by accident" through an attorney under whose observation the matter had fallen, and who brought it to their attention. They now plead the history of the title substantially as we have recited it, and insist, as a matter of law, that it establishes in themselves a good title to the undivided half of the undivided half of said land of which Joseph B. Meredith, senior, and William G. Meredith were tenants in common.

To this claim the defendants plead:

(1) That, under the law as it then stood, the title of the land of which the infant son died seized passed, upon his death, to his mother for life, with remainder over to the nearest surviving relatives of his father and mother; that this remainder on his mother's side vested in Jabez Ward,

who conveyed to the mother a title which merged the life estate and perfected in her a fee.

(2)   That the decree in the partition mentioned established and confirmed the title in Naamah G. Meredith.

(3)   That possession by the defendants under the conveyance from Naamah G. Meredith and from Jabez Ward, and under the decree of partition, was an adverse possession in good faith, under color of title and claim of right, for more than the statutory period, and is sufficient to entitle them to a decree dismissing the plaintiffs' bill.

In a carefully prepared written opinion, the trial court reached the conclusion that the remainder provided by the statute in favor of the "nearest heirs" of the mother, Naamah G. Meredith, was purely contingent, and did not and could not vest in anyone until the death of the life tenant; that the conveyance by Jabez Ward to Naamah G. Meredith, and the decree in her favor in the partition proceedings, added nothing to her right or authority to convey the land; and that her deed to William G. Meredith conveyed no more than her life estate in the property; and that the statute of limitations did not begin to run in defendants' favor until the death of Naamah G. Meredith, in the year 1910.

Were this case to turn entirely upon the construction of the statute referred to, or upon the single question whether the remainder over to the "nearest heirs" of the father and mother of Joseph B. Meredith, junior, is to be regarded as vested or contingent, or whether it is in the nature of an executory interest, and not a remainder at all, its decision would be by no means free from difficulty. The chapter of the Revision of 1860 in which these sections are found is full of perplexities, and is well described by Judge Dillon in *Meyer v. Meyer*, 23 Iowa 359, 369, where he says that, "of all existing statutes in this state, none are, in many material respects, more obscure and uncertain than those which

undertake to define what becomes of a man's property upon his death," and illustrates his remark by referring to *Norris v. McGaffick,* 21 Iowa 201, where this particular statute was considered. The word "heirs" in a statute would ordinarily be said to be so employed in its technical sense, and to presuppose the death of the ancestor; for, strictly speaking, no person has any heir or heirs as long as he lives. There is room for serious argument whether, under the peculiar circumstances of this case, as affected by the peculiar statute to which we have referred, the word "heirs," as there employed, is not used in a more popular and non-technical sense; and whether the remainder over, after the life estate of Naamah G. Meredith, is to be regarded as vested or contingent. But we think it unnecessary to enter upon any discussion of these questions, because our examination of the entire record leads us to the conclusion that, even if appellees' contention concerning the meaning of the words "nearest heirs," as employed in the statute, and concerning the alleged contingent nature of the remainder, be conceded. for the purposes of this case, they are not entitled to the relief prayed for.

The title of the defendants, admittedly acquired in good faith upon payment of the full and fair value of the land, has stood unchallenged for 50 years; the land has been bought and sold and mortgaged as the property in fee of the parties holding such title; it has been in the continuous, exclusive, open, and notorious possession of its successive grantees, under color of title and claim of right, and by them cultivated, improved, and controlled, without interruption by any adverse claimant, during all that time, and should not now be disturbed, except upon a clear and unquestionable showing of a superior title. Whatever may be said of the legal sufficiency of the defendants' title in its origin, it was not acquired surreptitiously.

1. REMAINDERS: rights of remainderman: adverse possession by purchaser.

Everything has been done in the open, and in the confident understanding and belief that there was no outstanding title or claim of title adverse to the grantees of Naamah G. Meredith. The appellees have not been deceived or misled by anyone. They have known the material facts from the outset, and, if the conveyance by Naamah G. and by her grantees still left an ungranted remainder, vested or contingent, in them, they are presumed to have known it; but during all these years, they have made no protest, given no warning, and taken no measures to protect their alleged interest in the property. But, say counsel,—and so the trial court seems to hold,—no right of action accrued to appellees until the death of Naamah G. Meredith. Now, it is an undoubtedly correct proposition that the remainderman, whether vested or contingent, cannot maintain an action of ejectment or other action of a possessory nature before the termination of the life estate upon which such remainder depends. It is equally true that the contingent remainderman cannot be granted a decree quieting the fee in him during the existence of the life tenancy, for he is not yet vested, and may never be vested, with the title. But we think no court has ever yet gone so far as to say that a contingent remainderman has no interest of any kind in the property of which equity will take cognizance, or for which, upon proper showing, the court will refuse its protection. Indeed, as was noted by this court in *Murray v. Quigley,* 119 Iowa 6, 15, there was, at all times during the period covered by the history of this case, and still is, a statute of this state expressly extending to any and all persons "claiming an interest in real property" the right to bring an action against "any person claiming title thereto," and to have their respective rights and interests in such property settled and determined. Code of 1897, Section 4223; Code of 1873, Section 3273; Revision of 1860, Section 3601. See. also, Code of 1897, Section 4307; Code of 1873, Section 3337.

The phrase, "any person claiming an interest in real property," is broad enough to fairly include any person claiming the rights of a remainderman in such property; and if there be another person claiming absolute title to the same property, it falls clearly within the scope of this statute; and, while the court will not undertake to award possession to the remainderman, or to quiet in him a title to which he may never succeed, it will settle and determine the nature and extent of the interest, if any, which he does possess, and establish and protect it against the adverse claims of those who deny such interest. This we distinctly held in *Murray v. Quigley*, 119 Iowa 6, *Garrett v. Olford*, 152 Iowa 265, *Wenger v. Thompson*, 128 Iowa 750, 756, and *Crawford v. Meis*, 123 Iowa 610, 618; and, in the application of such rule, held that a remainderman neglecting to avail himself of such right of action for more than the statutory period of limitation is thereby barred. In each of these cases, a party asserting title against a remainderman was holding under a deed by which the life tenant undertook to convey the entire fee, and in each case, the remainderman was held barred by the statute. It is argued here, however, that this holding is in conflict with the rule applied by us in *Westcott v. Meeker*, 144 Iowa 311. There is language used in that opinion which, taken as an abstract proposition of law, lends support to this objection; but the court, in the same *Westcott* case, distinguishes it from that which is presented in *Murray v. Quigley*, supra. Had the latter been thought to be unsound in principle, it must be presumed the court would have so held. It is also to be said that, in the *Westcott* case, no reference seems to have been made in argument or in the opinion to the effect of the statute upon which *Murray v. Quigley*, *Garrett v. Olford*, *Crawford v. Meis*, and *Wenger v. Thompson* are made to turn, and it cannot, therefore, be construed as in any manner overruling or disapproving such decisions. That there may not be any doubt

of the construction which we have given the statute, or of the purpose it is intended to serve, we call attention to the language employed by us in the *Murray* case, where, after noting the terms of the statute giving a right of action to any person claiming an interest in land, against any other person asserting a conflicting title, we said:

"Without such statutory authority, a reversioner out of possession and with no right thereto could not maintain an action against one in possession as a life tenant, and it was undoubtedly the thought of the legislature that the welfare of those interested, as well as the public in general, would be best subserved by providing a means whereby apprehended litigation affecting the use and enjoyment of real property might be at once settled. * * * And indeed, the purpose and intent of the statute seems to us to reach further than this, and to imply that such questions must be settled within the statutory period. There can, at least, be no hardship in holding such to be the rule in cases where there is no disability, and where the facts upon which apprehended litigation will rest are fully known."

The same question was again raised and argued in *Crawford v. Meis*, supra, and we were there asked to disapprove and overrule *Murray v. Quigley*. Refusing so to do, we said:

"It may be conceded that, as a general rule, the limitation statute does not begin to run against the remainderman until the termination of the preceding estate. * * * But the rule presupposes an uninterrupted continuation of the relation of life tenant and remainderman. As in the case of cotenants, it does not apply where there has been an ouster and disseisin by the life tenant, or one claiming by or through him, and this under claim of right or color of title followed by adverse possession for the statutory period. In the recent case of *Murray v. Quigley*, 119 Iowa 6, we distinctly held that, especially in view of our statutes giving

to remaindermen and reversioners a right of action to settle disputed questions of title, notwithstanding the continued existence of the dominant estate, the bar of the statute may be invoked as against a remainderman who, knowing that his rights are being disputed or assailed, has failed, during the limitation period, to assert such rights as against one holding possession adversely, and claiming under right or color of title. It is thought by counsel for appellant that the doctrine thus announced is unsound, and should not be adhered to; but we think otherwise. The rule involves no hardship, and the beneficial effect thereof must be to bring up for settlement disputed questions of title before becoming stale, and while yet the facts are within reach of the parties interested. Accordingly we are content to give the doctrine this further recognition, and to add thereto the sanction of our present holding."

In *Garrett v. Olford,* supra, the life tenant made a deed purporting to convey the entire fee; and it was held, upon the authority of the *Murray* case, that the parties occupying under this claim of right acquired a good title by adverse possession against the remainderman. So, also, in *Wenger v. Thompson* the testator devised the property to his wife for life, with remainder over at her death to be divided equally between all of his children "then living." This remainder, under our precedents, was clearly contingent. The life tenant conveyed the land by warranty deed to her brother. After about 20 years (but within less than 10 years after the death of the life tenant), the children of the testator brought suit to establish their title as remaindermen. While some question was raised that the language of the will gave the widow a fee, instead of a life estate, and gave her full power to convey, we declined to decide that phase of the dispute, saying that, even if these claims should be overruled, and it be conceded that the appellants were entitled to the rights of remaindermen under the will, "the

record shows that they were at all times well advised of the situation, including the claim of right asserted by plaintiff and his grantees, and this for 15 years after the elder became of age, and for 5 years after the younger became of age; and this being true, we are required to hold that, in any event, the claim now asserted by them comes too late" (citing, in support of this holding, *Murray v. Quigley* and *Crawford v. Meis*).

We may also add that our sister state of Nebraska, having a statute substantially like our own, has given it the same construction, citing *Murray v. Quigley* approvingly, and *First Nat. Bank v. Pilger*, 78 Neb. 168 (110 N. W. 704).

In so far as any of our own decisions may be thought to state a different rule, we think the inconsistency is apparent, rather than substantial, and that in none of them has there been any reference to the statute above mentioned which creates a right of action where one did not before exist; while in some there is an evident failure to discriminate between the right to maintain a possessory action and one to establish and protect a right which may ripen into a title.

It may also be noted that, if the remainder to the appellees herein is a contingent one, it is not of that class of contingencies where the remainderman is not *in esse* when the life tenancy is created, or where there is any possibility that the tenant for life may die before the designated remainderman comes into being, to receive the estate. On the contrary, the remainder is to the heirs of Naamah G. Meredith, and, upon her death at any time, her heirs, as such, would at once come into the title, if the remainder had not been extinguished. It appears without dispute that during this entire period, these plaintiffs and those whom they represent have constituted the entire number of her prospective heirs; and under the theory of their case, nothing but the life of this woman has ever stood between them

and the succession to the beneficial use and enjoyment of the property. These lands must have possessed very material value, even at the date of the death of the husband and son of Naamah G. Meredith. They have presumably grown more valuable with each passing year, and the remainder therein, if preserved, would have correspondingly increased in value as the limit of this single life drew nearer. During all this time, they have seen the property being bought, sold, devised, partitioned, used, and enjoyed by others, under claim of right and color of title wholly inconsistent with the idea of any outstanding remainder, vested or contingent, in themselves, and not only failed to exercise their right to go into court and have these conflicting interests authoritatively adjusted, but, until this suit was begun, 6 years after the death of the life tenant, and 50 years after the death of Joseph, junior, none of them ever made any claim of an interest of any kind in the land, or made objection to the appellants' assertion of a title which, if sustained, would conclusively negative the continued existence of their alleged remainder. That they had such right of action is shown, as we have seen, both by the statute and by our decisions already cited.

The application of the statute authorizing a suit in equity by any person claiming an interest in land, to settle disputes involving the validity of his claim, is not to be avoided by saying that appellees' remainder, if any, was a mere hope or expectancy or possibility, and therefore cannot be technically classed as an "interest in the property." The word "interest" has a much broader and comprehensive meaning than "title," and includes any right in or to the property dependent upon a contingency. 3 Pomeroy on Equity Jurisprudence (3d Ed.), Section 1286. A contingent remainder may be conveyed as an interest in land. *Wright v. Brown*, 116 N. C. 26 (22 S. E.

2. QUIETING
TITLE: "interest in property:" remainders.

313). It is an "interest in land." *Young v. Young*, 89 Va. 675 (17 S. E. 470) ; *Brown v. Fulkerson*, 125 Mo. 400 (28 S. W. 632) ; *Godman v. Simmons*, 113 Mo. 122 (20 S. W. 972) ; *People's L. & E. Bank v. Garlington*, 54 S. C. 413 ; *Davis v. Willson*, 115 Ky. 639 (74 S. W. 696). The statute is, of course, an innovation upon the ancient rule by which none but parties in possession of land and holding legal title thereto could maintain an action to quiet title or to adjudicate disputes concerning title ; but, if there was ever any good reason for such restriction of the right, it has long since ceased to be apparent ; and many, if not most, of the states have, by statute, extended to every person claiming an interest in land the right to go into equity for its adjudication and protection. We have repeatedly given it effect according to its terms, and held that laches much less flagrant than has been shown by these plaintiffs will bar the right to equitable relief.

3. LIMITATION OF ACTIONS : disabilities, etc. : laches.

It has been well said that all statutes of limitation are based on the theory of laches, and no laches can be imputed to one who has no remedy or right of action ; and to hold that the bar of the statute could run against the title of one so circumstanced would be to deprive such person of his estate without his day in court. *Mettler v. Miller*, 129 Ill. 630 (22 N. E. 529). It follows, therefore, that, when the statute was enacted giving to the remainderman a right to protect his interest in land against any and all adversaries by suit in equity, the reason for the rule upon which appellees herein rely was removed, and with it the rule itself ceased to be applicable.

4. ADVERSE POSSESSION : duration of possession : laches of remaindermen.

It cannot be said that the laches in this case is excusable because of any act of the appellants, lulling the appellees into a feeling of security, or because they had any reason to believe that appellants were asserting no right or title inconsistent with the existence of the alleged

estate in remainder.  Not only do all the facts and circum-
stances point to the constant and consistent assertion of a
hostile title by appellants and their grantors, during all the
50 years from the date of the deed from Jabez Ward to the
commencement of this suit, but it is admitted in the record
that William G. Meredith, through whom the appellants
trace title, purchased the same in 1873 by warranty deed
in good faith, understanding and believing that he was be-
ing vested with the fee of the land, and paying the full and
fair value therefor.  He is not only presumed to have en-
tered into possession claiming a title such as the deed to
him purported to convey (*Clarke v. Dirks,* 178 Iowa 335),
but the subsequent history of the case shows without dis-
pute that such has been the nature of the possession and the
character of the claim of title by all his successors therein.
This was as plain to the appellees as to the world at large,
and challenged their action under the statute to define and
protect their interest, if any they had.  If, to their minds,
their ancestor, Jabez Ward, had no title or interest to con-
vey to his daughter, Naamah G. Meredith, or if they denied
the efficiency of the partition proceedings to establish title
in her, or disputed her right to convey anything more than
her statutory life estate, the courts were open to them for a
period of at least 10 years to take up the challenge, have
the competing interest adjudicated, and remove forever the
grounds of apprehended future litigation.  On the other
hand, it was equally within their power to waive objection
to the title which their sister acquired, or supposed she had
acquired, to the fee of the land, and to her act in assuming
to convey the fee; and as they took no action within the
period of limitation, it is to be conclusively presumed that
they chose the latter alternative.

    If their alleged right to the land were clearly estab-
lished, either in law or in equity, the courts could not do
otherwise than sustain it, even though the result to the ap-

pellants were one of great and undeserved misfortune. But there are no persuasive equities apparent in the case made by the plaintiffs. They are the heirs of Naamah G. Meredith. She sold this land, receiving full value therefor, and presumably her estate was augmented by this amount and its accumulations, if any, to the day of her death. The appellees, as her heirs, are the beneficiaries of her estate; and if the facts and law were such as to require us to affirm the decree below, they would be adjudged the owners of this land, made valuable by the unrequited labor and sacrifice of others, while they hold in their grasp the fruits of the sale which they repudiate. We are well convinced that the law as settled in this state does not necessitate that conclusion.

The decree appealed from is, therefore, reversed, and the plaintiffs' bill will be dismissed.—*Reversed.*

LADD, C. J., GAYNOR and STEVENS, JJ., concur.